## The Consolidated Real Estate and Fire Insurance Company of Baltimore *vs.* John Cashow.

*Re-insurance—Statute of* 19 *George II. ch.* 37, *sec.* 4—*Liability*
*under a Policy of re-insurance—Estoppel— When Preliminary*
*proof of Loss is dispensed with—Expert.*

The fourth section of the Statute of 19 George II. ch. 37, which is in force in
Maryland and which provides "that it shall not be lawful to make re-assur-
ance unless the assurer shall be insolvent, become bankrupt, or die," relates
exclusively to marine re-insurance.

The Fulton Fire Insurance Company insured N. B. & Co. to the amount of
$10,000, on their Sugar Refinery, and subsequently re-insured itself against
loss or damage by fire on the same property in the office of the appellant to
the amount of $5000.    The property was destroyed by fire while both
policies were in force.    Suit having been brought against the Fulton Fire
Ins. Co. a judgment was rendered against it in favor of N. B. & Co., for
$9206,16.    Subsequently the Fulton Company was dissolved by legal pro-
ceedings, and its assets and effects on being sold by a receiver, paid to its
creditors a dividend of only twenty per cent.    The claim of the Fulton
Company against the appellant was purchased of the receiver at public.
auction by the appellee.    The policy of re-insurance contained the clause,
"Loss, if any, payable *pro rata* to them (The Fulton Company) at same
time and in the same manner as they pay."    By this policy the loss was

made payable within ninety days, and by that of the Fulton Company within sixty, days after due notice and poof of the same. Suit was brought by the appellee against the appellant on its policy of re-insurance. The defendant insisted that the plaintiff could in no event recover more than half the sum paid by the receiver to the parties originally insured by the Fulton Company. HELD:

That the defendant was responsible for one-half of the amount of the judgment recovered against the Fulton Company, such being the proportion or *pro rata* between the amount originally insured and the amount re-insured, agreeably to the terms of the policy of re-insurance.

Where property is insured, and the insurer re-insures, and it is destroyed by fire, and before the loss is paid, the original insurer becomes bankrupt, and the assured receives but a small dividend out of the bankrupt's estate, the re-insurer is still liable to pay the whole amount of the re-insurance to the trustee of the original insurer, without deducting the dividend, and the original assured has no claim in respect of the money so paid.

Where a policy of insurance containing an acknowledgment of the receipt of the premium, has been issued and delivered to the assured, the insurance company will not be permitted to allege a want of consideration for its promise when sued thereon, after a loss has happened.

By a policy of re-insurance, the insurance company stipulated that their insurance of $5000, was part of the "sum or sums insured by the Fulton Fire Ins. Co. of New York as above, for Newhall, Borie & Co. by their policies Nos. 2335 and 2779, *and to be subject to the same risks, valuations, conditions, and mode of settlements as are or may be adopted or assumed by said company.*" In an action on the policy, it was HELD:

That this clause not only dispensed with preliminary proof of loss, but fastened the responsibility of the defendant to the settlement and adjustment made by the original insurer with the original assured, as to the *amount of loss*.

A lawyer, thirty-four years of age, and residing in New York city, is competent to testify whether a receiver in making a sale under the statute law of New York, complied with its requirement as to notice.

APPEAL from the Superior Court of Baltimore City.

On the 28th of June, 1869, Newhall, Borie & Co., insured the Pennsylvania Steam Sugar Refinery, in Philadelphia, in the office of the Fulton Fire Insurance Com-

pany, of New York, against loss or damage by fire, to the amount of $10,000 for one year, and afterwards renewed the insurance for another year which expired on the 28th of June, 1871. Subsequently on the 30th of June 1870, The Fulton Fire Insurance Company re-insured itself against loss or damage by fire, on the same property, in the office of the appellant to the amount of $5000. On 26th of July, 1870, while both policies were in force, the property was destroyed by fire. On the 28th of the same month a letter was sent to the appellant informing it that the Fulton Company had on that day received notice of loss from Newhall, Borie & Co., of their Sugar Refinery. The premium on the re-insurance was not paid, but on the 2nd of February, 1871, some six months after the loss, it was tendered to the appellant and refused. A suit was brought in the Supreme Court of Pennsylvania at its October session, 1871, by Newhall, Borie & Co., against the Fulton Fire Insurance Co., of New York on its policy, and on the 24th of October, 1871, the suit was removed to the Circuit Court of the United States, for the Eastern District of Pennsylvania, where on the 5th of April, 1872, by agreement of counsel a verdict was rendered against the defendant in favor of the plaintiffs for $9,206.16, and on the 9th of the same month judgment was entered accordingly.

On the 5th of February, 1872, the Fulton Fire Insurance Company, was dissolved upon proceedings instituted according to the laws of the State of New York, under which it had been incorporated, and John M. Furman was appointed receiver with all the usual powers of receivers in like cases. On the 7th of August, 1872, the receiver sold at public auction, to the appellee, the claim of the Fulton Fire Insurance Company, against the appellant under its policy of insurance. A dividend of twenty per cent. was paid by the receiver to the creditors of the Fulton Company. On the 5th of September, 1872, the present suit was commenced.

The case is further stated in the opinion of the Court.

*Exception.*—The plaintiff offered the following prayers :

1. If the jury shall find that the Fulton Fire Insurance Company of New York, insured the property of Newhall, Borie & Company, described in the policy that has been offered in evidence, for $10,000, and afterwards employed Thomas J. Lancaster, an insurance broker in Philadelphia, to re-insure the same for the benefit of the said Fulton Fire Insurance Company, and that the said Lancaster procured the re-insurance thereof by the defendant, as appears by the policy that has been offered in evidence, and that the said last named policy was delivered to the said Lancaster, and was by him sent to the Fulton Fire Insurance Company, and to them delivered when they credited him with the amount of the premium, which the said Lancaster, subsequently after the fire, tendered to the said Company; who refused to receive it; then on said delivery to and receipt of the said Fulton Fire Insurance Company, the contract between the re-insurer and the re-insured became complete, and the defendant is estopped from contradicting the acknowledgment of the receipt of the premium contained in the policy, so executed and delivered by it.

2. If the jury shall believe from the evidence the facts stated in the foregoing prayer, and shall further find that the property re-insured was destroyed by fire after the execution and delivery of said policy of re-insurance, and before the expiration thereof, and that a suit was brought against the said Fulton Fire Insurance Company, in the Circuit Court of the United States for the Eastern District of Pennsylvania, and a verdict obtained against it for the sum of $9,206.16 ; then the defendant became responsible to the said Fulton Fire Insurance Company for one-half that sum, such being the proportion or *pro rata* between the amount originally insured and the amount re-insured, agreeably to the terms of policy of re-insurance, although

the jury may be satisfied from the evidence that the Fulton Fire Insurance Company became insolvent, and has been wound up and gone out of existence without paying the amount of the original insurance.

And the defendant prayed the Court to instruct the jury as follows :

1. The verdict must be for the defendant, because the policy sued on in this action is illegal.

2. The verdict must be for the defendant, because there is no evidence of a valid assignment to the plaintiff of the said policy sued on, nor of a valid assignment of any claim of the Fulton Fire Insurance Company under said policy to the plaintiff.

3. The verdict must be for the defendant, because there is no evidence of the preliminary proofs mentioned in the said policy sued on.

4. If the jury believe that the said policy sued on, was sent by the defendant by mail to the agent of the Fulton Fire Insurance Company of Philadelphia, about the time of the date of said policy, and that the premium mentioned in said policy was never paid to the defendant, and was never tendered to the defendant until the 1st of February, 1872, and that on or about the last named time, a check for $85 was tendered by said Lancaster to the defendant, and by the defendant returned to said Lancaster, then the verdict must be for the defendant.

5. If the jury find the facts set forth in the defendant's fourth prayer, then the verdict must be for the defendant, unless they shall find that payment of the premium mentioned in the said policy sued on, was waived by the defendant.

6. If the verdict should be for the plaintiff, then it must be for nominal damages only, because there is no evidence of the amount of loss resulting to the Fulton Fire Insurance Company.

7. The verdict, should it be for the plaintiff, cannot be for a larger sum than one-half of what the jury may find

was paid by the receiver to Newhall, Borie & Co., before the bringing of this suit, with interest on said one-half from the time of the loss.

The Court (DOBBIN, J.,) granted the prayers of the plaintiff and refused those of the defendant; the defendant excepted. A verdict was rendered in favor of the plaintiff for $5048, and judgment was entered thereon. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY J.

*Edward Duffy,* for the appellant.

The policy sued on was illegal and void. Re-insurance is prohibited by the Statute, 19 George II, ch. 37, sec. 4, which is in force in this State. The prohibition is against all re-insurance, and applies as well to fire as to marine policies, unless the general language of the fourth section is to be confined by the title of the statute.

The title and preamble are no parts of the Act and where the language of the Act is plain, they cannot control it. *Smith Stat. Law, sections* 557, 562, 563, 564; *Sedgwick Stat. Law,* 50, 51, 57-58; *Kent vs. Somerwell,* 7 *G. & J.,* 274; *Laidler vs. Young's Lessee,* 2 *H. & J.,* 71; *Davidson vs. Clayland,* 1 *H. & J.,* 550.

The reason for the enacting of the 4th section was that re-assurance had become a means for speculating in the rise and fall of premiums. 1 *Arnold on Ins., sec.* 118, *page* 286; and as such speculation could be carried on as well in fire as in marine policies, there can be no ground for supposing that the 4th section of the Statute which in terms prohibited all re-insurance was intended to apply only to marine policies—and no such distinction is made by the writers upon the subject. *Anzell Fire Ins. Prelim. View, sec.* 25 *and sec.* 83; *In Herckenrath vs. the Amer.*

*Mut. Ins. Co., 3 Barb. Chan. Rep.,* 67, which was a fire risk upon a stock of goods in New York City, the Court made no such distinction, and in the *N. Y. Bowery Fire Ins. Co. vs. N. Y. Fire Ins. Co.,* 17 *Wend.,* 362, a similar fire risk, the Court expressly deny such a distinction.

In *Andree vs. Fletcher,* 2 *Term Rep.,* 164, it was contended that as the title and first section of the Statute applied to *British* ships only, therefore the 4th section applied to *British* ships only, and the same argument used by the appellee here was urged in that case, but the Court decided that the general prohibition of the 4th section could not be restrained by the title. In *Solomon vs. Bewicke,* 2 *Taunton,* 316, which was upon a fire risk, it was in like manner contended that the general language of the 7th sec., which applied to suits upon " any policy of insurance " should be confined by the title, to suits upon marine policies, but Chambre, J., said that " *there is nothing in the Statute which necessarily confines it to the case of marine insurances.*" These cases are conclusive of the question here.

The premium never having been paid, nor tendered until six months after the loss, the appellant was not bound. The words " order for insurance " mean policy of insurance ; the appellant's fourth prayer should therefore have been granted. *Bradley vs. Potomac Fire Ins. Co.,* 32 *Md.,* 108; *Bliss Life Ins., p.* 239 ; *Sec.* 162-3-4-5. *p.* 242, 244.

At all events the appellant's fifth prayer submitting the question of waiver to the jury should have been granted. *Bliss on Life Ins.,* 237, 243 ; *Boehen vs. Williamsburgh Ins. Co.,* 35 *New York,* 133.

The appellant's second prayer should have been granted because there is no evidence of title in Cashow. The order of Court appointing the receiver authorized him " to collect, sue for and recover the debts " of the company. Not to sell them. The sale to Cashow was therefore a nullity.

Neither did the N. Y. statutes give him such power, because, unless otherwise proved to have that effect, we are to construe them as we would our own. Now our own Insolvent law authorizes a trustee to sell, but the practice has been uniform, that the sale must be reported to and ratified by the Court, which was not done in this case. The evidence of Lee to prove the sale to have been valid was inadmissible; his first answer does not shew him to be an expert, a lawyer practicing in New York or informed in the law of that State; it merely shews that he is a lawyer, and that he *resides* in New York. He may have practiced in New Jersey, and there only for all we know from the evidence.—But even if it were admissible all he says is that there was "due public notice and advertisement as required by the laws of the State of New York," not that the *sale* was valid or according to such laws; and even if his answer were to be construed to mean that the sale was valid under "the laws of the State of New York," under what *laws* was it valid, statute or common? if statute, they are to be proved by the statute and not by an expert. *Balto. & Ohio R. R. Co., et al. vs. Glenn, et al.,* 28 *Md.,* 323 ; 1 *Greenl. Ev., secs.,* 486, 488 ; *Gardner vs. Lewis,* 7 *Gill,* 393-4.

The seventh clause in the appellant's policy, and the ninth of the Fulton Ins Co. requires preliminary proof of the loss which was never given to the appellant. The appellant's third prayer should, therefore, have been granted. *Flander's Fire Ins.,* 31-2.

The appellant's sixth prayer should have been granted because there is not a tittle of evidence of the extent of the loss ; unless the judgment against the Fulton Co., can be deemed such. No notice was ever given to the appellant of the existence of such a proceeding, and even if the judgment had been rendered in the usual course, it would have been *res inter alios ;* but this judgment was entered up by agreement, that is, it was a judgment by confession, and consequently no more admissible against the appel-

lant than any other agreement to which it was not a party. The re-insured must shew the extent of the loss against the appellant in the same manner as the original insured against them.   *Flander's Fire Ins.*, 31-2-4 ; *Yonkers and New York Fire Ins. Co. vs. Hoffman Fire Ins. Co.*, 6 *Robertson*, 320-1 ; 2 *Phil. Ev.*, 8 *and* 9 *notes.*

The appellant's seventh prayer should have been granted, because by the terms of the policy sued on the loss was " payable *pro rata to them at the same time and in the same manner as they pay.*" Now the only amount ever paid to the original insured was twenty per cent., (five per cent. of which was paid after this suit was brought,) and under no circumstances is the appellant responsible in this suit, for more than the fifteen per cent.   Where acts to be done are concurrent, the plaintiff must aver performance or offer to perform on his part.   1 *Saund. Pl. and Ev.*, 208.

The policy of the appellant was not an insurance of the *solvency* of the Fulton Co.

*John H. B. Latrobe*, for the appellee.

The validity of the assignment to the appellee, turns upon the Revised Statutes of New York, part III, Ch. 8, Article 2nd, secs. 39, 40, 41, 42, and 3rd sec. 68 ; and part II, ch. 5, Article 8, sec. 4, agreed to be read in evidence.   Upon this point, Benjamin F. Lee, a lawyer of the City of New York, testifies to the sale to the appellee, " after due public notice and advertisement as required by laws of the State of New York."

Failure to pay the premium before the loss occurred, is relied on as a defence by the appellant.   The answer to that is, that the delivery of the policy, and the acknowledgment therein of the payment of the premium, preclude such a defence.

To this it is replied, that condition 5 of the policy, provides that "*No order for insurance* will be of any force unless the premium be first paid to the secretary of the company."

Now, in the first place, there is. a clear distinction between an *order* for insurance which precedes, of course, the issuing of the policy, and the issue and delivery of the latter.

An order for insurance anticipates a future payment; the policy, here, acknowledges a past one. The one is a proposal to contract; the other, is a solemn contract under seal.

Condition 5 is inapplicable to the case, and the appellant is clearly estopped by the policy from denying its liability, because of the non-payment of the premium. The principle is well stated in Marshall on Insurance, thus: "The payment or non-payment of the premium can have no effect on the insurance. Every insurer may insist on being paid the premium before he subscribes the policy—but having once subscribed it, and given credit for the premium, no matter to whom, he shall not afterwards be at liberty, when a loss has happened, to object to want of consideration for his promise. *Marshall on Insurance,* 335. See also to the same effect, 1 *Phillips on Insurance,* 514; *Goit vs. National Protection Ins. Co.*, 25 *Barb.*, 189; *N. Y. Central Ins. Co. vs. National Protection Ins. Co.*, 20 *Barb.*, 469, 475; 3 *Kent*, 360, 3rd edition; *Dalzell vs. Mair*, 1 *Camp.*, 532; *Foy vs. Bell*, 3 *Taunton*, 493; *Barnum vs. Childs*, 1 *Sanford*, 58.

The premium then having been paid, what is the extent of the liability under the re-insurance?

"If an underwriter repent of what he has done, if he be afraid to encounter the risk he has engaged to run, or find that he has incautiously bound himself to a greater amount than he may be able to discharge, he may shift it, or part of it, to other insurers by causing a re-insurance to be made on the same risks, upon the best terms he can, and the new insurers will be responsible to him in case of loss, to the amount of the re-insurance. But they will be answerable to him only, and not to the original insurer,

who can have no remedy against them in case of loss, even though the original insurer become insolvent ; because there is no privity of contract between them and the original insured. If therefore the original insurer fail, so that the original insured receive only a dividend however small, the re-insurer can gain nothing by this, but must pay the full amount of the loss to the original insurer." *Marshall on Insurance, Ch. 4, sec. 3, page* 143 ; *Phillips on Ins., sec.* 498 ; *Hone vs. Mutual Safety Ins. Co.,* 1 *Sanford,* 137, *affirmed in* 2 *Comstock,* 235 ; *Herckenrath vs. Am. Mut. Ins. Co.,* 3 *Barb. Ch. Rep.,* 67 ; *Eagle Insurance Co. vs. Lafayette Ins. Co.,* 9 *Ind.,* 443 ; *Carrington vs. Commercial Ins. Company,* 1 *Bos.,* 152 ; *Blackstone vs. Alemannia Fire Ins. Co.,* 56 *New York,* 104.

The appellant's sixth prayer was properly rejected ; insisting as it did that the verdict must be for nominal damages only, because there was no evidence of the amount of the loss resulting to the Fulton Fire Insurance Company. The measure of damages in the event of the loss was fixed by the policy itself—the appellant insured the Fulton Fire Insurance Company against loss or damage by fire to the amount of $5,000 "to be subject to the same risk, valuations, conditions and mode of settlement as are or may be adopted or assumed by said Company." When the Fulton Fire Insurance Company adopted or assumed the sum of $9,206.16 as the amount of their loss, their doing so fixed the liability of the appellant at one-half that sum. Relying upon the Fulton Fire Insurance Company to require all necessary proofs, and fully to investigate any claim that might be made in the event of loss, the appellant submitted itself to such settlement as the Fulton Company might adopt or assume.

MILLER, J., delivered the opinion of the Court.

This is an action upon a policy of re-insurance issued by the appellant to the Fulton Fire Insurance Company of

New York. The Fulton Company had insured Newhall, Borie & Co. to the amount of $10,000, on their sugar refinery, in Philadelphia, and subsequently re-insured itself against loss or damage by fire on the same property, in the appellant's company, to the amount of $5,000. The fire and loss occurred while both policies were in force. The right to recover on this latter policy is resisted upon several grounds, which appear in the exceptions, and have been very fully and forcibly argued in this Court.

1st. It is first contended that the re-insurance effected by this policy is void because prohibited by the 4th section of the Statute of 19 *Geo. II, ch.* 37, which has been adopted, and is in force in Maryland. *Kilty's Rep. of Statutes,* 252; *Alexander's British Statutes,* 760. The appellee, on the other hand, insists that that Statute and this section of it refers exclusively to marine insurance, and this is the first question to be determined. The section in question provides " that it shall not be lawful to make re-assurance unless the assurer shall be insolvent, become a bankrupt, or die." This language standing by itself would be broad enough to cover fire as well as marine re-insurance, but it must be construed with reference to the provisions of the preceding and 'subsequent sections of the same law. So construed and looking. to the whole Statute and all its provisions, we are of opinion, after a careful consideration of the question, that the appellee's position must be sustained. By its title it professes to be " An act to regulate insurance on ships belonging to the subjects of Great Britain, and on merchandise or effects laden thereon," and the mischiefs recited in the preamble, to remedy which the Statute was passed, all have reference to injuries which Parliament supposed had resulted to ships and their cargoes, and to British commerce from the practice of making such insurance. Though this would not control any express provision of the enacting part of the Statute clearly evidencing the

legislative intent to give it a more extended operation, yet it requires such intent to be apparent and expressed in plain language, and confines expressions not thus plain, but ambiguous or susceptible of a narrower construction, to the subject-matter embraced by the general purview of the Act. After the preamble, the first section enacts that "no insurance shall be made on any ship belonging to his majesty or any of his subjects, or on any goods, &c., laden or to be laden thereon, interest or no interest, or without further proof of interest than the policy, or by way of gaming or wagering, or without benefit of salvage to the assessor, and every such insurance shall be null and void to all intents and purposes." The second section allows such insurance on private ships of war, and the third on merchandise or effects from any ports or places in Europe or America in the possession of the crowns of Spain or Portugal. Then comes the 4th section, which prohibits re-assurance except in case of the insolvency, bankruptcy or death of the assurer, and all the subsequent sections except the 7th, plainly refer to marine insurance. In the seventh section, introduced for the wholly different and foreign purpose of regulating the practice of the Courts in actions on insurance policies, the language used is, that if a party be sued "in any action on *any policy* of insurance, he may bring into Court any sum or sums of money, &c." Here the purpose of the provision is apparent, and the intent to take it out of the purview of the Act, and give it a more extensive and general operation, is expressed in appropriate and plain terms. When the practice under this section came in review in *Solomon vs. Bewicke*, 2 *Taunt.*, 318, which was a suit upon a fire policy, it was contended that this clause came within the general purview of the Act, and was to be confined, like its other provisions, to marine insurance, the whole purpose of the Statute being to facilitate and protect the maritime commerce of Great Britain, but, said *Sir James Mansfield,*

"how does the seventh clause, construe it as you will, relate to marine insurances or regulate them? It is quite out of the title to the Act. It probably occurred to some person while the Act was pending in Parliament, that it was a very hard thing that defendants could not pay money into Court in actions on policies, and he therefore inserted this clause. It has nothing to do with the purview of the Act. The mischief is exactly the same in cases of marine and other insurances, and possibly the person who framed the clause might have had that in contemplation, and it is hard to believe that there would not have been, by this time, another Act of Parliament to redress this grievance, if it had not been supposed the existing law already applied to it. Here is a clause certainly general, and the words are large enough to extend to all policies of insurance, and the question is, whether there be anything in the Act which necessarily confines it to marine insurance. The general purview of the Act relates certainly to marine insurances, but how many cases are there, as it has been properly admitted, where Acts of Parliament extend to things wholly foreign to their purview." But the very opposite reasoning applies to the fourth section. Its purpose and language are fairly within the general purview of the Act, and the re-insurance there made unlawful may well be held to mean re-insurances on marine risks. From the tenor of his opinion we cannot doubt that learned Judge would have so decided if that section had been before him for construction. In *Thellusson vs. Fletcher*, 1 *Doug.*, 315, the policy (one of those described in the first section) was on goods on board a foreign ship, and it was held not to be a policy within the first section, as foreign ships had not been included therein. *Andree vs. Fletcher*, 2 *Term Rep.*, 161, was a case of re-insurance under the fourth section, effected in England on a foreign ship, and the Court held that every re-insurance in England effected either by British subjects or

foreigners, whether on British or foreign ships, was made void by that section. But that was a marine insurance, and the case throws no light on the question we are now considering. These are all the English decisions we have been able to find in which this Statute has been before the Courts for construction. The Statute was repealed by 27 and 28 *Vict.*, *ch.* 56, and the repealing Act gives a plain legislative construction of the meaning and effect of this original fourth section. It recites the title of the original Act, and that by its fourth section it is prohibited to make re-assurance, except in cases therein mentioned, which restriction it is expedient to remove, and then enacts "that notwithstanding anything contained in the said Act, it shall be lawful to make re-assurance upon any ship or vessel, or upon any goods, merchandise or other property on board any ship or vessel, or upon the freight upon any ship or vessel, which may be lawfully insured, and such re-assurance shall be deemed to be the insurance of interests which may lawfully be insured, within the meaning of the Act imposing stamp duties on policies of sea insurance." This latter Statute was itself repealed by 30 and 31 *Vict.*, *ch.* 23, and the legality of re-insurance is provided for by the new Statute, by the simple expedient of including re-insurance under sea insurance, when defining that term for the purposes of the new Act. *Arnould on Marine Ins.*, 94. It is scarcely possible these repealing Acts would have been couched in these terms if it had ever been supposed by the English bench and bar that the original prohibition applied to re-insurance on fire as well as on marine risks. But apart from this, and upon the plain rules governing Courts in the construction of statutes, it is, we think, very clear the language of this fourth section must be confined to marine re-insurance. Apart from any statute making it unlawful, there can be no question of the validity of such a contract. The original insurer by his insurance acquires such an interest

in the property insured as to enable him to insure it for his own protection, and such contracts of re-insurance are in common use, and have always been upheld as legitimate and valid in this country.

2nd. The next question of most importance relates to the extent of liability under the policy, and it arises in this way. The Fulton Company, before paying the loss, became insolvent, was dissolved by legal proceedings, and its assets and effects on being sold by a receiver, paid to its creditors a dividend of only twenty per cent. On this state of facts the appellants insist there can, in no event, be a recovery on this policy for more than half the sum paid by the receiver to the parties originally insured by the Fulton Company. But from the nature of the contract of re-insurance, the insolvency of the original insurer in no wise affects or limits responsibility under it. There is no privity of contract between the original assured and the re-insurer. The contract of re-insurance is totally distinct from, and unconnected with the original insurance; the original assured has no kind of claim against the re-insurer; the re-assured remains solely liable on the original insurance, and alone has any claim against the re-insurer. Hence, if the original insurer becomes bankrupt and the assured be paid but a small dividend out of his estate, the re-insurer is still liable to pay the whole amount of the re-insurance to the trustee of the original insurer without deducting the dividend, and the original assured has no claim in respect of the money so paid. This view of the nature and character of this contract was early adopted by the maritime nations of continental Europe, where it originated, and has been recognized and followed by all the treaties and decisions on the subject since. We confine our references to *Arnould on Marine Ins.*, 94; *Marshall on Ins.*, 112, 113; *Hone vs. The Mutual Ins. Co.*, 1 *Sandf. Superior Court Rep.*, 137, affirmed in 2 *Coms.* 235; *Herckenrath vs. The American Mutual Ins. Co.*, 3 *Barb. Ch.*

*Rep.*, 63; *Eagle Ins. Co. vs. The Lafayette Ins. Co.*, 9 *Indiana*, 443, and *Blackstone, Receiver, &c. vs. The Alemannia Ins. Co.*, 56 *New York*, 104.

This being the unquestioned law of such contracts generally, the question then is, have the parties modified it by any express stipulation of the policy in suit? It is argued that the clause "Loss, if any, payable *pro rata* to them" (the Fulton Company,) "at same time, and in the same manner as they pay," has this effect. In another part of this policy the loss is made payable within ninety days, and in that of the Fulton Company, within sixty days after due notice and proof of the same. In the case of *Blackstone vs. The Alemannia Ins. Co.*, just referred to, a clause almost identical in terms with this, was relied on for the same purpose. That clause was, "Loss, if any, payable *pro rata*, and at the same time, with the re-insured," and with respect to it and the argument founded thereon, the Court say, "By virtue of the first part of this clause the defendants are not bound to pay the full amount re-insured by their policy, but only such a proportion of the amount of the loss as is the ratio of the amount of the re-insurance to the amount originally insured. Thus the defendants' re-insurance being for half the amount of the original insurance, the defendants are to pay half the loss. In regard to the latter part of the clause in question which says, that the loss is payable 'at the same time with the re-insured,' it is not possible to conclude from it that actual payment by the re-insured is in fact to precede or to accompany payment by the re-insurer. It looks to the time of payability and not to the fact of payment. It has its operation in fixing the same period for the duty of payment by the re-insurer as was fixed for payment by the re-insured. To give to it the construction contended for by the defendants, would, in substance, subvert the whole contract of re-insurance as hitherto understood in this State." We discover no essential difference between the clause there construed,

and the one before us. The same reasoning applies to the latter, and when we consider the distinct and independent nature of this contract, and that it is wholly unaffected by the insolvency of the original insurer, there is, we think, no escape from the force of that reasoning. We cannot, therefore, sustain this position of the appellants.

3rd. Another defence is failure to pay the premium before the loss occurred. It was not tendered until after the loss, when it was refused. But the policy was issued and delivered, and it contains an acknowledgment of the receipt of the premium. This precludes such a defence unless controlled by some plain stipulation in the instrument itself. The only condition of the policy that can possibly affect this question, is the fifth, which says : "No order for insurance will be of any force unless the premium be first paid to the secretary of the company." But this is very different from the conditions of the policy in *Bradley's Case*, 32 *Md.*, 108, upon which that decision was rested. There the conditions provided that the company should not be held liable *under the policy*, or any renewal thereof until the premium in full therefor was *actually paid*, and if not paid within fifteen days *the policy* should be null and void. Here, whatever may be the meaning of the terms "order for insurance," we cannot construe them as meaning the same thing as the policy itself. In its common acceptation, an order for insurance is something that precedes the issuing of the policy, and the probable purpose of this condition was to prevent the applicant from acquiring any right, and any liability attaching to the company, under such an order, unless preceded or accompanied by payment of the proposed premium. But at all events, it does not mean the same thing as the policy, the solemn sealed contract between the parties. If a policy be executed and delivered containing an acknowledgment that the premium has been received, the company will not be permitted to allege a want of con-

sideration for their promise when sued thereon after a loss has happened.  *Marshall on Ins.*, 240 ; 1 *Phillips on Ins.*, *sec.* 514.  That is the general rule, and the condition relied on does not exempt this policy from its operation.

4th.  Failure to furnish preliminary proof of loss, is also set up as a bar to a recovery.  The policy contains the usual condition respecting such proof.  It likewise contains all the other usual conditions of an insurance policy as if it were an original insurance and not a re-insurance.  The inartificial and slovenly manner in which contracts of this character are often made, frequently give rise to much difficulty, and more than once have drawn from the Courts strong expressions of censure.  By the careless use of printed forms, conditions applicable to the one class of insurances are embodied in contracts for the other, where they have but little significance or meaning.  In this case, however, the parties have used more caution, and the difficulty is obviated by the insertion of a clause peculiarly appropriate to a contract of re-insurance.  By this policy the appellants have stipulated that their insurance of $5000, is part of the " sum or sums insured by the Fulton Fire Insurance Company of New York, as above, for Newhall, Borie & Co., by their policies, Nos. 2335, and 2779, *and to be subject to the same risks, valuations, conditions and mode of settlement as are or may be adopted or assumed by said company.*"  This, in our opinion, overrides the condition relating to preliminary proof and renders the furnishing of such proof to the appellants wholly unnecessary ; and it not only dispenses with such proof, but fastens the responsibility of the re-insurer to the settlement and adjustment made by the original insurers with the original assured, as to the *amount of loss*.  We are unable to impute any other intent to the parties in inserting this clause in their contract.  The proof shows the Fulton Company were sued on their policy in the Circuit Court of the United States for the Eastern District of Pennsylvania,

and a verdict and judgment rendered against them for $9206.16. The mode in which this amount was ascertained, is described by the witness Newhall, one of the original insured parties, and there is no imputation of fraud or bad faith on the part of any one in making it. The Fulton Company assumed this as the amount of the loss they were liable to pay, and by so doing, in the absence of fraud or bad faith, fixed the liability of the appellants at one-half of that sum; and that was the measure of recovery allowed against them in the Superior Court. This was in strict conformity with the contract of the parties embodied in this policy. The appellants relied upon the Fulton Company to require all necessary proofs, whether preliminary or other, and to investigate any claim that might be made in the event of loss, and submitted themselves to such settlement as the Company might in good faith adopt or assume. It therefore makes no possible difference that the settlement took the shape of judgment by confession, or that that judgment was rendered without notice to the appellants of the proceeding. It follows from what has been said on this point, that the testimony of Newhall, stating the mode in which this sum was arrived at, was properly admitted by the Superior Court.

5th. The remaining question relates to the appellee's title. It is contended there has been no valid assignment of the policy or of any claim under it, to him, and he cannot, therefore, maintain this action. One condition of the policy is that if it shall be assigned without the consent of the company obtained in writing thereon, it shall be null and void. But this evidently refers to an assignment *before loss*, and we did not understand the appellants' counsel as resting his objection to the validity of the assignment on any failure to comply with this condition. It appears from the proof, that the Fulton Company was dissolved upon proceedings instituted according to the laws

of the State of New York, where and under which it had been incorporated, and John M. Furman was appointed its receiver, "with all the usual powers of receivers in like cases, to take charge of the property and effects of the company, and to collect, sue for and recover the debts and demands due, and the property belonging to it." The receiver, on the 7th of August, 1872, sold at public auction the claim of the Fulton Company against the appellants under this policy to the appellee, and that is his title. Its validity depends upon the construction and effect of certain parts of the revised statutes of New York, which it was agreed should be read from the printed volumes, and whether the proceedings of the receiver in making the sale have been in conformity therewith. Under these statutes receivers in that State are, by express provision of law, empowered and directed "from time to time to sell at public auction all the estate, real and personal, vested in them, or which shall come to their hands, after giving at least fourteen days' public notice of the time and place of sale, and also publishing the same for two weeks in a newspaper printed in the county where the sale shall be made, if there are any." We do not find any provision similar to those in our insolvent laws requiring such sales to be reported to and ratified by the Courts, and the purchaser's title is not made to depend upon such report and ratification. The receiver advertised on the 24th of July, and sold on the 7th of August. If we are to construe this statute as if it were an Act of our own Legislature, we should hold the receiver had complied with its requirement as to notice. If we are to determine whether his action would be so regarded by the Courts of New York, we must have recourse to the testimony of witnesses competent to testify on that subject. The evidence of the witness Lee, on this point, who swears that the sale was made "after due public notice and advertisement *as required by the laws of the State of New York*," settles the question,

provided he is shown to be sufficiently an expert to give such testimony. He states that he is thirty-four years of age, and resides in New York City, and is by occupation a lawyer. This we regard as sufficient to enable him to testify as he has done. The objection, that he is not shown to be a lawyer practicing in New York, or informed of the law of that State, but merely that he is a lawyer and *resides* in New York, and for aught that appears, may have practiced in another State only, is too refined to be tenable. The facts that he resides in New York, and is a lawyer by profession, authorizes, in the absence of opposing proof, the inference that he practices his profession in the State or city of his residence, and this makes him competent to testify respecting the matter about which he was examined.

This disposes of all the several grounds of defence. The rulings of the Superior Court being in accord with the views we have thus expressed, it follows there is no error in them, and the judgment appealed from must be affirmed.

*Judgment affirmed.*

(Decided 1st July, 1874.)