THEODORE H. MACDONALD, INSURANCE COMMISSIONER, *vs.* THE ÆTNA INDEMNITY COMPANY.

First Judicial District, Hartford, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

Creditors of a corporation in the hands of a receiver may appeal to this court from an order and decree authorizing the receiver, upon his application, to compromise and settle claims against another corporation pursuant to terms offered by the latter, since their interests are directly involved and affected by such action.

Such a decree, however, lies within the discretionary power of the trial court, and can be set aside upon appeal only where it appears to have been so unreasonable under the circumstances as to amount to a clear abuse of the judicial discretion.

In passing upon such an application the field of inquiry covers the probable validity of the claims urged by the receiver, the apparent difficulties, if any, likely to be encountered in an attempt to enforce them in the courts, the collectibility of a judgment when obtained, the delays and expense incident to litigation, and the

Macdonald *v.* Ætna Indemnity Co.

value of a full satisfaction at some future, indefinite time, as compared with a smaller sum payable immediately.

In the present case the receivers of the Ætna Indemnity Company sought the advice of the Superior Court respecting an offer to compromise claims presented by them against the Munich Reinsurance Company, growing out of a contract between such companies. This offer, while approved by most of the creditors of the Ætna Company, was opposed by three large creditors upon the ground that there could be no doubt but what the contract relied upon was one of reinsurance pure and simple, and that by virtue thereof the Munich Company could be forced to pay all the claims in full; and consequently that there was no reason or basis for the proposed compromise. The Munich Company, on the other hand, contended that the contract differed in many respects from the customary reinsurance undertakings, and that it was a contract of limited indemnity only. *Held:*—

1. That while the trial court could not technically adjudicate and settle this dispute, even were it disposed to do so, it was, nevertheless, bound to consider the different constructions contended for, in its endeavor to ascertain, in a general way, the probable or possible result of litigation, and thus be in a position to act intelligently in passing upon the proposed terms of compromise.

2. That there was some doubt, at least, as to whether the original underwriting contracts of the Ætna Company were, strictly speaking, contracts of insurance, and therefore whether the Munich Company's undertaking was one of reinsurance; and that in view of this doubt, re-enforced as it was by a provision in the contract between the two companies which apparently required the Ætna Company to produce a discharge given by the original insured before the Munich Company could be called upon to pay or credit the Ætna Company, and which, therefore, tended to support the indemnity theory of construction, and of the presence of the arbitration clause,—features which were absent from the cases relied upon in support of the reinsurance interpretation,—it could not fairly be said that the claims of the receivers were so clearly and unquestionably valid in their entirety that the passage by the trial court of an order authorizing them to settle them at fifty cents on the dollar, plus the full amount of the Munich Company's share for expenses incurred by the Ætna Company in their adjustment, was an abuse of its discretion.

Argued October 7th—decided November 10th, 1914.

APPLICATION in receivership proceedings pending in the Superior Court in Hartford County for advice and, if judged wise, an order of court authorizing the re-

ceivers of the Ætna Indemnity Company to compromise and settle certain claims made by them against the Munich Reinsurance Company under an alleged reinsurance contract pursuant to and in accordance with a proposal of settlement made by the latter; the court, *Greene, J.*, after hearing the parties in interest, passed its order authorizing the proposed settlement, and from this action certain creditors of the Ætna Indemnity Company appealed. *No error.*

In this court the appellees filed a motion to erase the appeal, substantially upon the ground that no questions of law or issues of fact were determined by the court below and therefore that the cause was not appealable.

The Ætna Indemnity Company was in 1897 chartered by the General Assembly of the State of Connecticut with authority to do, and thereafter did, an extensive business throughout the United States in executing, for a consideration, contracts of suretyship on the bonds or obligations of other persons and corporations, in issuing insurance contracts guaranteeing the fidelity of persons holding places of public or private trust, in guaranteeing the performance of contracts and other undertakings, and in issuing policies of insurance against loss or damage by burglary, robbery, or theft, and against loss or damage to plate glass. The Company also issued policies of health and accident insurance pursuant to authority conferred upon it.

In October, 1905, it entered into a contract, commonly called a treaty, with the Munich Reinsurance Company of Munich. This contract was a renewal of a similar one between the two companies which had been in force for several years. It contains twenty-one articles, among which are the following:—

"I. The 'Ætna' undertakes to cede to the 'Munich' by way of reinsurance the first surplus (i. e., excess

amount above its own retention) arising under bonds issued by the 'Ætna' through its United States branches and agencies for fidelity and surety guarantee insurance, and the 'Munich' binds itself to accept such cessions and to reinsure accordingly subject to the following stipulations of this treaty.

"II. The amount reinsured with the 'Munich' shall in no case and at no time exceed the amount retained by the 'Ætna' at its own liability on the same risk provided that the 'Munich' has not specially accepted an amount exceeding the retention of the 'Ætna.'

"VI. The reinsurances ceded to the 'Munich' shall extend proportionately over all Bonds issued by the 'Ætna' on one and the same person for one and the same contract.

"XIII. All settlements of claims in which the 'Munich' may be interested under this Treaty, made by or on behalf of the 'Ætna' whether by payment, compromise or otherwise shall be unconditionally binding on the 'Munich' who shall be bound to pay their proportion of all expenses connected with any resistance to negotiations concerning and settlement of claims.

"The 'Munich' shall, however, be credited with its share of any reimbursement which may be made to the 'Ætna.'

"XIV. Upon receipt by the 'Munich' of certified copies of discharge given to the 'Ætna' by its Assured the 'Munich' is bound to credit the 'Ætna' with its share of any claims in which it may be interested. It being understood that all claims not exceeding $1,000 due by the 'Munich' to the 'Ætna' shall be carried to account and claims exceeding $1,000 shall be either carried to account or remitted by the 'Munich' to the 'Ætna' at the option of the latter.

"XVIII. In the event of any difference hereafter arising between the contracting parties with reference

to any transaction under this Treaty the same shall be referred to two arbitrators who are to be chosen amongst the Managers or Secretaries of Insurance Companies, one to be chosen by each Company and in case of their disagreement, to an Umpire chosen by the said two arbitrators who shall interpret the present contract rather as an honorable engagement than as a merely legal obligation, and their award shall be final and binding on both parties."

In the early part of 1911 receivership proceedings were begun against the Indemnity Company and receivers appointed. At this time the Company had suffered a number of losses under its surety and guarantee contracts and policies, which came within the provisions of the treaty with the Munich Company. Some of these losses have already been adjusted by the receivers; others are in process of adjustment or remain to be adjusted.

In December, 1913, the receivers made a formal demand upon the Munich Company for payment by it to them of its pro rata share, to wit, one half of these losses then adjusted and one half of the expenses incurred in adjustment, claiming that the latter company was obligated by the treaty, as a reinsurance contract, to pay such pro rata share regardless of whether the losses had been paid and settled, or whether they should ever be paid either in whole or part. The Munich Company took the position that the contract was not one of reinsurance, and that it was not liable under the contract to do more than indemnify the Indemnity Company for the amounts that the latter should pay under its original contracts.

In this situation of affairs the Munich Company submitted to the receivers a proposal of compromise as follows: "The Munich Reinsurance Company, of Munich, Bavaria, proposes to the receivers of the Ætna In-

demnity Company to compromise and settle the demands heretofore made upon it by said receivers, and the demands that may hereafter be made upon it with respect to claims against The Ætna Indemnity Company upon which the Munich Reinsurance Company is liable as a reinsurer still pending before the Committee in the receivership proceedings, upon the terms and conditions set forth in the foregoing application and order, and agrees to credit, allow and pay over to said receivers its proportion of adjusting expenses already incurred and 50% of its proportionate share of liability on claims already allowed and determined in the receivership proceedings on which the Munich Reinsurance Company is liable as reinsurer, and 50% of its proportionate share of liability on all claims upon which it is liable as reinsurer which are still pending and undetermined in the receivership proceedings, as and when said claims shall be hereafter allowed and determined by the Court or by the Committee to whom they are referred in said proceedings."

This proposal the receivers referred to the court for instructions in the pending application. After due notice to the attorneys of all intervening creditors of the Indemnity Company a hearing was had. Counsel representing a considerable number of the larger creditors appeared and urged the acceptance of the proposed compromise. The only opposition arose from counsel of the present appellants representing three large creditors. The court found that it would be for the best interests of creditors and all others interested in the liquidation and winding up of the affairs of the company that the proposition be accepted, and passed its order authorizing and empowering the receivers to accept it. From this order the appeal is taken.

From the affidavits filed in connection with a motion to rectify the finding, it appears that the following was

Macdonald *v.* Ætna Indemnity Co.

represented to the trial court upon the hearing as the situation touching the claims presented to the Indemnity Company coming within the purview of the Munich Company's contract: Those adjusted at the time that the order appealed from was passed amounted to nearly $100,000, of which sum the Munich Company's pro rata share was about $48,000. In the adjustment of these claims the receivers had expended a little over $12,000. The unadjusted claims may amount to the further sum of $35,000 or thereabouts.

*Albert H. Barclay,* for the appellants (certain creditors).

*John T. Robinson,* with whom was *J. Birney Tuttle,* for the appellees (receivers).

PRENTICE, C. J. The receivers moved to erase this appeal, which was taken by creditors of the corporation whose affairs are in settlement, assigning as reasons: (1) that the order appealed from was not the proper subject of appeal, and (2) that the appellants were not entitled to take an appeal therefrom.

In support of the first proposition it is alleged that an appeal could not be predicated upon the order because it was not in the nature of a judgment, and did not involve the determination of any question of law or fact in issue, but was rather an order made in the exercise of the court's discretion in respect to a purely administrative matter. The opinions of this court in *Guarantee, etc., Deposit Co.* v. *Philadelphia, R. & N. E. R. Co.,* 69 Conn. 709, 714, 38 Atl. 792, and in *Links* v. *Connecticut River Banking Co.,* 66 Conn. 277, 283, 33 Atl. 1003, furnish a complete answer to these contentions. The first determines that the order was the proper subject of an appeal; and the second that cred-

itors whose interests were directly involved were proper parties to take such an appeal. See also *Trustees* v. *Greenough*, 105 U. S. 527, 531, as to the appealable character of the order.

The order appealed from was one which was entered in the exercise of the court's discretionary power. It cannot be set aside by us unless it appears that it was so unreasonable, under the circumstances before the trial court, that its authorization amounted to a clear abuse of the judicial discretion. *Wood* v. *Holah*, 80 Conn. 314, 315, 68 Atl. 323; *Cables* v. *Bristol Water Co.*, 86 Conn. 223, 225, 84 Atl. 928. The question before the trial court for decision was as to the course of business conduct which, as a matter of prudential policy, should be pursued by the receivers in the administration of the assets of a receivership estate. The question before us is the very different one of whether or not the decision arrived at was such an unreasonable one that it was without warrant in the exercise of the court's discretion. The question presented to the trial court did not involve, nor does that presented to us involve, the decision of an issue of law. In both cases the decision to be made was, and is, one calling for a careful weighing and balancing of a variety of considerations in arriving at a conclusion as to the course of prudence under the circumstances. The field of inquiry covers the subject of the probable validity of the claim made by the receivers, the apparent difficulties, if any, likely to attend an attempt to enforce it in the courts, the collectibility of a judgment obtained, the delays likely to be involved, the importance of these delays, the expense likely to be incurred, and the amounts involved in respect to both assured recovery and surrender.

For the most part these are purely practical considerations. At points, however, some of them touch legal questions quite closely. This is particularly true

of the matter of the validity of the claim which is the subject of the proposed compromise. That is an important factor in the situation. No intelligent conclusion, as to the wisdom or unwisdom of the proposed compromise, can be arrived at which does not take it into account. And yet the question of validity, important as it is, is not in issue. Its decision is not called for, and none could be made which could possess any other importance than as expressing a personal view. It would bind nobody, and conclude nothing. The inquiry which the trial court was called upon to make had, and that which we are now to make has, no other purpose and possesses no other importance than the ascertainment in a general way of the probable or possible result of litigation of the claim. This inquiry, to be intelligent, must be made by one possessed of legal knowledge, and in the pursuit of it legal knowledge must be employed. But legal decision is not called for, and would be idle if attempted.

The contention of the appellants gathers around the proposition that the claim is, in its entirety, unquestionable and, beyond all save captious dispute, valid. Starting with this proposition as its fundamental premise, further propositions are added, to wit: that jurisdiction over the reinsuring corporation can be easily obtained, the claim readily embodied in a judgment, and funds for the satisfaction of such judgment be reached without difficulty. These facts established, as the appellants contend, they continue their argument by the assertion that in the presence of such conditions showing certainty of enforcement and collection, no other facts disclosed or considerations advanced, whether touching delay or expense, or any other matter, could, by possibility, furnish a reasonable justification for the surrender of the large sum involved.

This argument would be most convincing were the

major propositions asserted clearly established. Evidence is lacking to support the propositions touching the means of enforcement and satisfaction of the claim by litigation, and judicial knowledge can scarcely fully supply this lack. But the convenience and sufficiency of the available procedure of enforcement and collection may be assumed, and there yet remains the underlying question of the validity of the claim made by the receivers.

Reinsurance treaties, as customarily written, have repeatedly had judicial construction, and the obligations of the reinsurer under such contracts determined. The appellants take their position upon this adjudication, and assert that they establish incontestably that this reinsurer—the affairs of the reinsured being in the hands of the court for settlement—is obligated not merely to indemnify the reinsured, but to pay to its receivers the full amount of the reinsurer's pro rata share of all losses payable by the reinsured as soon as determined, and whether paid by it in full or only in part, or not at all. This assertion is doubtless well made if the treaty before us does not differ materially either in its general character or in some of its pertinent provisions from those under examination in the cases relied upon. That of *Allemannia Fire Ins. Co.* v. *Firemen's Ins. Co.*, 209 U. S. 326, 28 Sup. Ct. Rep. 544, is perhaps the most recent, as well as the most comprehensive in statement, of this quite considerable group. The reinsurance treaty there was a typical one. Its provisions were in no substantial respect different from those which had entered into the adjudications of the prior cases. Upon a review of several of these cases the following clear statement of the nature of the contract and of the obligations assumed by the reinsurer was made (p. 332): "The contract is one of indemnity to the person or corporation reinsured and it binds the

reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured. It is not necessary that the reinsured should first pay the loss to the party first insured before proceeding against the reinsurer upon his contract. The liability of the latter is not affected by the insolvency of the insured or by its inability to fulfill its own contract with the original insured. The claim of the reinsured rests upon its liability to pay its loss to the original insured and is not based upon the greater or less ability to pay by the reinsured." The contract is thus made not merely one of indemnity, but one requiring payment by the reinsurer to the reinsured of the former's pro rata amount of losses as they accrue, altogether regardless of payment by the reinsured or his ability to pay.

With respect to this entire group of cases, culminating in the *Allemannia* case, it is to be noted that all the contracts involved in them were reinsurance contracts, properly speaking. The reinsured was engaged in an insurance business solely. The original risks were all insurance risks, and the provisions of the several contracts touching liability were, in all material respects, substantially uniform. The court in the *Allemannia* case began its discussion by observing that the term "reinsurance" had a well-known meaning, and that contracts of that character had been in force in the commercial world for a long period of years. It then proceeded to interpret the contract by the aid of the adjudicated cases.

The present record does not disclose under what form of contract the Indemnity Company's outstanding obligations arose. It was authorized to execute contracts of suretyship on the bonds or obligations of other persons or corporations, and presumably some, and perhaps a large proportion of the claims against it,

arose under such contracts in which it assumed a suretyship rather than indemnity obligation. 12 Special Laws, p. 714, § 7. It was empowered to become the guarantor of the fidelity of persons holding places of public or private trust, and of the performance of contracts, and to execute or guarantee bonds or undertakings in all actions or proceedings where bonds are required. We are not informed as to the extent of this feature of the company's business, or as to the form which the guarantee contracts executed assumed; but presumably there were such contracts furnishing outstanding losses, and quite likely some or all of them took the form of guaranty rather than indemnity contracts. These suretyship and guaranty contracts lie outside of the ordinary and strict field of insurance. 1 Brandt on Suretyship & Guaranty (3d Ed.) § 5; 22 Cyc. 80. Insurance against the consequences to the company as surety or guarantor is thus not in strictness reinsurance, but forms the first insurance stage in those transactions.

The importance of this distinction, as related to the liabilities of the Munich Company, under its contract, remains to be considered. In an English case decided only last year a very similar situation was presented. *In re Law Guarantee Trust & Accident Soc., Ltd.*, L. R. (1913) 2 Ch. Div. 604. The Law Guarantee Trust and Accident Society, having in the ordinary course of its business guaranteed certain debentures, effected a reinsurance of its risk to the extent of two elevenths with the Liverpool Mortgage Insurance Company. Payment of the bonds was defaulted, and the Society went into liquidation. The original contract of the Society was interpreted to be one of suretyship on special terms, the Society insuring no risk in the ordinary sense, but undertaking with the creditor to pay if the principal debtor did not, and it was held that, such being the

case, the supplemental contract of the Company could not be one of reinsurance in the ordinary sense of that word.  pp. 611, 612.  It was, says the court, more properly to be described as one of limited indemnity, with the result that neither the Society, nor those representing it in liquidation, could recover a greater amount than it had itself paid.  p. 612.

If this conclusion should be accepted as resting upon sound principles and applicable to the present contract, an attempt to enforce the claim of the receivers in its entirety would face difficulties.  We have no occasion to express our views upon the legal question involved. It is apparent that the feature of the present contract now under consideration, somewhat new to litigation, furnishes the reinsurer an opportunity for the presentation of an obstructive defense too substantial to be ignored, and one which, if successful even in part, might be seriously disturbing to the interests of the creditors of the receivership.

In this connection it is also worthy of notice that the provisions of the present contract touching the time and conditions of payment, as contained in Article XIV, are quite differently expressed than in any of the previous cases relied upon.  The *Allemannia* case recognizes that the obligations of the reinsurer as therein stated might be modified or changed by difference in provisions.  In that case the provision was that the reinsurer should pay its pro rata share of losses "in the same manner, and upon the same terms and conditions as paid by the said reinsured company under its contracts."  It was held that there was no substantial difference between this language and that of the contracts in earlier adjudicated cases noticed, where the provisions were: "in case of loss this company shall pay pro rata at and in the same time and manner as the company reinsured" (*Cashau* v. *Northwestern Nat. Ins.*

*Co.*, 5 Biss. [U. S. C. C.] 476); "loss, if any, payable at the same time and pro rata with the insured" (*Ex parte Norwood*, 3 Biss. [U. S. C. C.] 504; *Blackstone* v. *Allemannia Fire Ins. Co.*, 56 N. Y. 104); "loss, if any, payable pro rata to them at the same time, and in the same manner as they pay" (*Consolidated Real Estate & Fire Ins. Co.* v. *Cashow*, 41 Md. 59). In other earlier cases the provisions were either identical with those enumerated (*Fame Ins. Co.'s Appeal*, 83 Pa. St. 396; *In re Republic Ins. Co.*, Fed. Cas. No. 11,705); or "loss, if any, payable pro rata with the reinsured" (*Norwood* v. *Resolute Fire Ins. Co.*, 47 How. Pr. [N. Y.] 43); or "to pay as may be paid thereon" (*In re Eddystone Marine Ins. Co.— Ex parte Western Ins. Co.*, L. R. [1892] 2 Ch. Div. 423); or "loss, if any, to be settled and paid pro rata with the reinsured, and at the same time and place, and upon the same terms and conditions" (*Hunt* v. *New Hampshire Fire Underwriters Asso.*, 68 N. H. 305, 38 Atl. 145). In the present treaty the language points more directly to a condition precedent of prepayment, and might be urged to support an indemnity construction.

Again, the present treaty apparently differs from those which have heretofore been before the courts in that it contains Article XVIII. Very possibly it would be held that neither of these two distinguishing features change the contract in any material respect from those which have had judicial interpretation. That was not for the court below, and is not for us, to determine. The point is that the court below was not dealing with certainties, since it is apparent that the situation is one which furnishes the reinsurer something more than idle grounds for defensive litigation.

In view of these considerations, taken in connection with the undoubted advantages attending a prompt settlement of the existing controversy without liti-

gation, the immediate liquidation of the reinsurer's liability upon adjusted claims and the payment unquestioned of the full amount of its share of the very considerable sum representing upon the receivers' books expenses incurred in adjustments, it is impossible for us to say that the court's action approved at the hearing by representatives of a large amount of claims, and opposed by only one, in authorizing acceptance of the offer of compromise, was an abuse of its discretion.

There is no error.

In this opinion THAYER, RORABACK and BEACH, Js., concurred.

WHEELER, J. (dissenting). I agree with the majority of the court that the order appealed from cannot be set aside, unless it appears upon the record to be so unreasonable as to have been a clear abuse of the judicial discretion. I am of the opinion that the finding should be so corrected that the claims of law made by the appellants may appear of record.

The receivers of the Ætna Company made application to the court for advice as to their duty respecting a proposition made by the Munich Reinsurance Company to settle and compromise certain demands by the receivers. Thereupon the court passed the order appealed from, which authorized the compromise of claims aggregating more than $80,000 for fifty per cent thereof. These claims arose out of losses for which the Ætna is liable. The Ætna and Munich had entered into a reinsurance contract, as the contract terms it and as its subject-matter makes it, by which the Munich reinsured certain stipulated risks of the Ætna, the losses under which constitute the claims whose compromise the order authorized.

The question for the trial court was whether or not a

compromise of fifty cents on the dollar was one which ought to be authorized. The question for us is whether the authorization of such compromise was so unreasonable upon the facts of record as to have been an abuse of judicial discretion.

The opinion of the majority suggests that the field of inquiry before the trial court covered the question as to the collectibility of the judgment which might be obtained by the receivers if their claims were pressed to judgment. That question was not before the trial court. No interest attacked the financial responsibility of the Munich. No such attack could have been successfully made, and the court could not have so relied in making its order. For the statutes of the State required the Munich, before it began business here, to deposit with the treasurer of this State, or with the proper officer of some other State, $200,000 in securities authorized by law for investments by savings-banks. So that there was no issue before the trial court as to the collectibility of any judgment the receivers might secure against the Munich on their claim.

The ordinary delays and expense attendant upon a litigated case of this nature are not, and could not be, claimed to be a sufficient justification for the compromise of a claim of this magnitude.

Thus the only issue of record before the trial court which might have justified the order of compromise was the issue concerning the probable validity of the claim. The court's order did not involve the legal decision of this issue. It did involve its consideration of this issue with a view to determining whether the claim was clearly valid, or subject to legitimate doubt. If the claim were clearly valid, it would not be contended that a compromise of an undoubted legal claim of as large magnitude as this against a responsible debtor for fifty cents on the dollar would be wise, or that an

order of a court to that effect would be a legal exercise of the judicial discretion. If, on the other hand, the legal validity of the claim was seriously the subject of doubt, it could not be said that an order for its compromise was an abuse of the judicial discretion. Therefore the real question, and the sole question before us, is: Does this record show that this claim was clearly valid, or does it show that it was an invalid claim, or at least one of doubtful validity?

The application, whose facts are admitted, recites that the Ætna Indemnity Company ceded to the Munich Reinsurance Company certain risks arising under bonds for fidelity and guaranty insurance issued by it, pursuant to a contract entered into by the parties and annexed to the application. Our statutes required that the Ætna should reinsure a proportion of its risks. The Munich denied liability under its contract with the Ætna, except upon its receipt of certified copies of the discharge of such claims given to the Ætna. The contract itself, over and over again, treats and designates its undertaking as reinsurance. The interpretation given to reinsurance contracts has been a uniform one for over two hundred years. It is the settled law of the land "that a reinsurer of a specific risk is liable in case of loss to pay its obligation to the original insurer, irrespective of whether the original insurer is solvent or able to pay the loss in full or not." The opinion of Mr. Justice Peckham in *Allemannia Fire Ins. Co.* v. *Firemen's Ins. Co.*, 209 U, S. 326, 28 Sup. Ct. Rep. 544, is an authoritative utterance upon this subject by our highest court, and while it stands the law upon this point should be regarded as settled. The decisions in this country before this opinion held to this doctrine, and those which have followed continue to hold to it. The contract of reinsurance between these companies must bear this interpretation, unless

some of its provisions take it out of what may be termed the standard form of reinsurance contract.

In the trial court two articles of the contract, XIV and XVIII, were presented as those features which differentiated this from the usual reinsurance contract. The claim made under Article XIV was the same claim made in the *Allemannia* case. There, as here, the original insurer was insolvent, and the reinsurer had there pleaded: first, that it was not liable because the insurer had not paid its loss and secured its discharge; second, that the reinsurer could only be held liable for the ratable proportion of the sums actually paid by the insurer. These defenses were held invalid. Article XVIII does not bear a doubtful construction. Its effect is to oust the court of jurisdiction; such an agreement is illegal. *Chamberlain* v. *Connecticut Central R. Co.*, 54 Conn. 472, 487, 9 Atl. 244. This provision is collateral to the main agreement, and is not a condition precedent to the payment of the loss. *Hamilton* v. *Home Ins. Co.*, 137 U. S. 370, 385, 11 Sup. Ct. Rep. 133.

The application shows that all claims against the Ætna have either been determined or referred to a committee to report its findings thereon to the court for its decision. The liability of the Munich will be concluded by the determination of these claims. The arbitration article cannot now be permitted to open the decree of the court.

The main ground of the majority opinion is that some of the risks of the contract were suretyship contracts, and these have been, and quite likely may be, differentiated by the courts from the reinsurance contract, and hence afford basis for the conclusion that the recovery is doubtful.

Assuming that this legal claim might create a doubt concerning the recovery, the claim itself has no relevancy to this case. 1. It rests upon the assumption of

the fact that some of these losses in controversy arose out of suretyship risks. There is nothing in the record which points to this as a fact. It hardly seems permissible to resolve a fact of such high significance against the appellants, nor to found upon it an argument tending to show the uncertainty of the law upon this assumed position. 2. The application recites, and its facts are admitted, that the Ætna ceded to the Munich "certain stipulated proportions of risks arising under bonds for fidelity and guarantee insurance." The losses under these risks, so ceded, constitute the claims whose compromise the order authorized. We thus know from the admitted facts that the risks so ceded were not suretyship risks. 3. In the law of insurance, fidelity and guaranty contracts are construed by the courts as contracts of insurance rather than as those of suretyship. *American Surety Co.* v. *Pauly,* 170 U. S. 133, 144, 18 Sup. Ct. Rep. 552; Richards on Insurance (3d Ed.) § 469. Whenever contracts reinsuring fidelity and guaranty contracts have been before the courts of this country, the general doctrine applicable to reinsurance contracts, viz., the doctrine of the *Allemannia* case, has been upheld. *French Mut. General Soc.* v. *United States F. & G. Co.,* 203 Fed. Rep. 558, 566. The reinsurance contract between these parties is a contract of indemnity, a method of insurance applied in a special way to cover particular risks already assumed by the original insurer. The claims of the receivers are obligations of the Munich arising under its contract with the Ætna against which it has no defense, hence the order compromising the claim of more than $80,000 for fifty per cent thereof was, in my judgment, an abuse of the judicial discretion, and should not be upheld by this court.