ALLEMANNIA FIRE INSURANCE COMPANY OF PITTSBURG *v.* FIREMEN'S INSURANCE COMPANY OF BALTIMORE, TO THE USE OF WOLFE, RECEIVER.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 180. Argued March 17, 18, 1908.—Decided April 6, 1908.

Reinsurance has a well known meaning, and, as the usual compact of reinsurance has been understood in the commercial world for many years, the liability of the reinsurer is not affected by the insolvency of the reinsured company or by the inability of the latter to fulfill its own contracts with the original insured; and in this case the compact, notwithstanding it refers to losses paid, will be construed to cover losses payable by the reinsured company; and, in a suit by the receiver of that company on the compact, the fact of its insolvency and non-payment of the risks reinsured does not constitute a defense.

28 App. D. C. 330, affirmed.

THIS action was brought by plaintiff, who is the defendant in error, in the Supreme Court of the District of Columbia for the purpose of recovering an amount alleged to be due the plaintiff from the defendant (plaintiff in error) on a policy of reinsurance. The plaintiff obtained judgment in the trial court, which was affirmed in the Court of Appeals of the District.

The plaintiff had originally insured the property which was destroyed, and had prior to the loss reinsured a proportion of the original insurance with the defendant company. After such reinsurance the plaintiff suffered heavy losses by reason of the great fire in the city of Baltimore in the month of February, 1904, for which losses it became liable, and was rendered thereby insolvent, and is unable to pay the same, unless the plaintiff is able to collect the amount due it from the defendant by virtue of its reinsurance policies, and from other corporate fire insurance companies with which plaintiff had contracts of reinsurance. By reason of the insolvency of the corporation a receiver was appointed, by a decree of the Circuit Court of Baltimore city, prior to the commencement of this action.

Upon the trial the plaintiff proved a cause of action against the defendant, unless the facts, which it also proved, that it had become insolvent by reason of the losses sustained by it incident to the Baltimore fire in 1904, and that a receiver had been appointed for it by the court in Maryland, and that the receiver had paid to its creditors, after this suit was brought, but fifty-five per cent of the amount of its liability, amounted to a defense.

The contract between the plaintiff and defendant was described therein as a "reinsurance compact," and in it the defendant agreed to "reinsure the Firemen's Insurance Company" in the amounts and manner therein stated.

There were contained in the compact, and forming part thereof, the following subdivisions:

"10. Upon receiving notice of any loss or claim under any

contract hereunder reinsured the said reinsured company shall promptly advise the said Allemannia Fire Insurance Company, at Pittsburg, Pa., of the same, and of the date and probable amount of loss or damage, and after said reinsured company shall have adjusted, accepted proofs of, or paid such loss or damage, it shall forward to the said Allemannia Fire Insurance Company, at Pittsburg, Pa., a proof of its loss and claim against this company, upon blanks furnished for that purpose, by said Firemen's Insurance Company, together with a copy of the original proofs and claim under its contract reinsured, and a copy of the original receipt taken upon the payment of such loss; and upon request, shall exhibit and permit copies to be made of all other papers connected therewith, which may be in its possession.

"11. Each entry under this compact, unless otherwise provided in this compact, shall be subject to the same conditions, stipulations, risks and valuation as may be assumed by the said reinsured company under its original contracts hereunder reinsured, and losses, if any, shall be payable *pro rata*, with, in the same manner, and upon the same terms and conditions as paid by the said reinsured company under its contracts hereunder reinsured, and in no event shall this company be liable for an amount in excess of a ratable proportion of the sum actually paid to the assured or reinsured by the said reinsured company under its original contracts hereunder reinsured, after deducting therefrom any and all liability of other reinsurers of said contracts or any part thereof."

The defendant gave no evidence, but requested the court to instruct the jury as follows:

"No. 2. The jury are instructed that proof of mere liability on the part of the plaintiff under the original contracts or policies, involved in this suit, is not sufficient to entitle it to a verdict against the defendant; and the jury are therefore further instructed that they must return a verdict in favor of the defendant, unless they shall find from the evidence that the plaintiff has actually paid the whole or some

part of one or more of the claims against it enumerated in the schedule annexed to the contract of reinsurance here sued upon.

"No. 3. The jury are instructed that if they find for the plaintiff, their verdict must not be for an amount in excess of a ratable proportion of the various sums actually paid by it to its policyholders under the original contracts or policies enumerated in the schedule attached to the declaration filed herein."

These instructions were refused and the refusal duly excepted to. Thereupon the jury, under instructions, returned a verdict in favor of the plaintiff for $12,613.24, being the amount which it was conceded was due under the reinsurance compact, provided the fact of insolvency and non-payment by the reinsured did not constitute a defense.

*Mr. Andrew Y. Bradley* and *Mr. H. Prescott Gatley*, with whom *Mr. Charles H. Bradley* was on the brief, for plaintiff in error:

Under the contract of reinsurance sued upon the reinsured must have paid the losses on risks carried by it before it can recover from the reinsuring company.

The provisions found in §§ 10 and 11 of the contract are absolutely controlling in this case.

There is nothing unreasonable in the provisions nor do they contravene any rule of public policy. The contract of reinsurance is made not for the benefit of the policyholders under the reinsured company, but for the protection of the reinsured, and the language of it clearly demonstrates that it was intended, not as protection against mere liability to pay, but against actual payment of losses.

"Contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense." *Imperial Fire Ins. Co.* v. *Coos*

*County,* 151 U. S. 462, 463; 2 Parsons on Contracts (7th ed.), 626, 632.

The language of paragraph 11 of this contract is neither technical nor ambiguous nor have any of the terms therein used "acquired a meaning district from the popular sense of the same terms." They must, therefore, be taken and understood in their plain, ordinary and popular sense. The words "and in no event," in thèir plain, ordinary and popular sense, include and refer to insolvency as clearly as though that word were visibly written in the contract.

This contract provides that "in no event shall this company be liable for an amount in excess of a ratable proportion of the sum, actually paid," not a ratable proportion of the loss. The liability of the reinsuring company being clearly and expressly fixed by the terms of the contract, the court will not enlarge it. Kerr on Ins., 729, 735; *Imperial Ins. Co.* v. *Coos County (supra).*

-The moment the reinsured accepted the contract in this case it assumed and took upon itself the duty of performing a certain definite act by which, and by which alone, the extent and measure of the liability of the reinsuring company could be ascertained in the event of a loss. The reinsured, by its acceptance of this contract, agreed that "actual payment" by it of its losses should be a condition precedent to its right of recovery against the reinsuring company. Langdell on Contracts, § 33; Ostrander on Insurance, § 334; Kerr on Insurance, 740; *Braunstein* v. *Ins. Co.,* 1 Best & S. 728.

The insolvency of the reinsured was an event the happening of which could have been provided against by the terms of the contract. There being no such provision in the contract, it must be conclusively presumed that the parties had that event, as well as all others, in mind when they agreed that "in no event" should the reinsuring company be liable for an amount in excess of ratable proportion of the sum actually paid, etc.

The fact that performance of this condition precedent is

now impossible does not invalidate it, nor is the reinsured relieved or discharged from its obligation.

*Mr. William F. Mattingly* and *Mr. T. Wallis Blakistone* for defendant in error:

The contract did not contemplate insolvency. It was a contract of indemnity and the legal construction of § 11, in connection with the entire contract, following the strict intent of both parties to it, is that in no event should the defendant be required to pay under its contract more than its ratable proportion of the actual liability of the plaintiff. May on Ins., §§ 11, 11*a;* 2 Clement on Fire Ins., 551, 557; *Consolidated R. E. & F. Ins. Co.* v. *Cashow,* 41 Maryland, 59, 74, 75; *Blackstone, Rec'r,* v. *Allemannia Ins. Co.,* 56 N. Y. 104; *In re Insurance Company's Appeal,* 83 Pa. St. 396; *Cashau* v. *Northwestern Nat. Ins. Co.,* 5 Fed. Cas. No. 2,499; *Ex parte Norwood,* 18 Fed. Cas. No. 10,364; *In re Republic Ins. Co.,* 20 Fed. Cas. No. 11,705.

The construction of these reinsuring contracts, as shown by authorities cited, is in conformity with the general principles, relating not only to indemnity contracts, but all contracts. The fundamental rule of construction is that the consideration of the situation of the parties when the contract was made, its subject matter and the purpose of its execution, are material to determine the intention of the parties and the meaning of the terms they used, and that when these are ascertained they must prevail over the words of the stipulations. *Kauffman* v. *Rœder,* 54 L. R. A. 247, 250; *S. C.,* 47 C. C. A. 278; *Canal Co.* v. *Hill,* 18 Wall. 94; *O'Brien* v. *Miller,* 168 U. S. 287; *Insurance Co.* v. *Duval,* 8 S. & R. 147; *Illinois Ins. Co.* v. *Andes Ins. Co.,* 67 Illinois, 362; *Eagle Ins. Co.* v. *Lafayette Ins. Co.,* 9 Indiana, 443; *Gantt* v. *American Ins. Co.,* 68 Missouri, 503; 24 A. & E. Enc. (2d ed.), 265*f,* 267 (2), 270, VIII.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The only question before the court is as to the construction

of the language of the reinsurance compact. The term "re-insurance" has a well-known meaning. That kind of a contract has been in force in the commercial world for a long number of years, and it is entirely different from what is termed "double insurance," *i. e.*, an insurance of the same interest. The contract is one of indemnity to the person or corporation reinsured and it binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured. It is not necessary that the reinsured should first pay the loss to the party first insured before proceeding against the reinsurer upon his contract. The liability of the latter is not affected by the insolvency of the insured or by its inability to fulfill its own contract with the original insured. The claim of the reinsured rests upon its liability to pay its loss to the original insured and is not based upon the greater or less ability to pay by the reinsured. If the reinsured commenced his action against the reinsurer before he had himself paid the loss the reinsured took upon himself the burden of making out his claim with the same precision that the first insured would be required to do in an action against him. But there is no authority for saying that he must pay the loss before enforcing his claim against the reinsurer. These propositions are adverted to and enforced in *Hone &c.* v. *The Mutual Safety Insurance Company*, 1 Sandf. Superior Court Reports, 137, where the authorities upon the subject are gathered and reviewed at some length. The case itself was subsequently affirmed in the Court of Appeals in 2 N. Y. 235. See also *Blackstone* v. *Allemannia Fire Insurance Company*, 56 N. Y. 104. The same doctrine is held in *Consolidated Real Estate &c.* v. *Cashow*, 41 Maryland, 59.

Counsel for plaintiff in error frankly concedes that the legal propositions above stated are correct, and unless there is something in the special provisions of this reinsurance contract which changes the ordinary rule on that subject the judgment herein must be affirmed. Reference is made to the eleventh subdivision of the policy in question. Under the language of

that clause the plaintiff in error contends that the general rule is altered, and that unless the reinsured has paid over the money on account of the loss, to the original insured, the reinsurer is not bound to pay under this particular contract of reinsurance. Language somewhat like that used in the eleventh subdivision has been construed in other cases. In *Blackstone* v. *Allemannia Fire Insurance Company, supra,* the language used was "loss, if any, payable *pro rata,* and at the same time with the reinsured." The Court of Appeals of New York held that the first part of the clause relieved the defendant from paying the full amount of the loss and made it liable only for its *pro rata* share, so that the defendant's reinsurance being for half the loss, the defendant was only held liable to pay half the loss. Continuing, the court said (p. 107): "In regard to the latter branch of the clause in question, which says that the loss is payable 'at the same time with the reinsured,' it is not possible to conclude from it that actual payment by the reinsured is, in fact, to precede or to accompany payment by the reinsurer. It looks to the time of payability and not to the fact of payment. It has its operation in fixing the same period for the duty of payment by the reinsurer as was fixed for payment by the reinsured. To give it the construction contended for by the defendant would, in substance, subvert the whole contract of reinsurance as hitherto understood in this State."

In *Ex parte Norwood,* 3 Biss. 504, a clause in the reinsurance policy stated that "loss, if any, payable at the same time and *pro rata* with the insured," and it was held that such language simply gives to the company the benefit of any defense, deduction or equity which the first insurer may have, making the liability of the reinsured the same as the original insured. It does not limit such liability to what the original insurer may have paid or be able to pay. Speaking of this clause, Judge Blodgett said:

"The reinsuring company is to have the benefit of any deduction by reason of other insurance or salvage, that the

original company would have, and also to have the benefit of any time for delay or examination which the original company might claim, so that the liability of the reinsuring company shall be co-extensive only with the liability and not with the ability, so to speak, of the original company. .

"The original company may have reinsured for the purpose for which reinsurance is usually, if not universally, accomplished—for the purpose of supplying itself with a fund with which to meet its obligations. It may have placed its own funds entirely out of its control; it may have divided its capital among its stockholders, and may depend solely upon the reinsurance to make good its liability to policyholders.

"The intention of this clause was to make the reinsuring company's liability co-extensive, and only co-extensive, with the liability of the original insurance company.

"For instance, suppose an insurance company in the city of Chicago wishes to go out of business. It has money enough to reinsure all its risks, and does so, and goes out of the insurance business. That company does not keep a fund on hand any longer for the purpose of meeting losses as they fall in, but depends upon its reinsurance.

"Now, it is to my mind absurd to say, if a loss occurs on one of those reinsured policies, that the company primarily liable is to have its claim against the reinsuring company limited by its ability to meet its obligations to its original policyholders. The very object of making the policy of reinsurance was to place the company in funds with which to make its policyholders whole, and that is defeated if the construction which is insisted upon by the assignee is the true one.

"The fair, liberal construction, it seems to me, of this clause, and the salutory one, is to assume that the true intent of it— the judicial meaning—is that the liability of the reinsurance company is to be no greater than that of the original company; that they are not to be compelled to pay any faster than the original company would be compelled to pay; that they are to have the benefit of any defense which the original company

would have had. Any deduction—any equity—which the original company would have had against the original insured is to inure to the benefit of the reinsuring company.

"I am of opinion that the Republic is liable on these policies to the extent of the adjusted losses, even if the Lorillard had not paid a cent."

In *Cashau* v. *The Northwestern &c. Insurance Co.*, 5 Biss. 476, in the reinsurance policy there was a clause that the reinsurer shall "pay *pro rata* at and in the time and manner as the reinsured." It was held that the reinsurer was to have all the advantages of the time and manner of payment specified in the policy of the reinsured, but that it had no reference to the insolvency of the reinsured. The court in that case said:

"The insolvency of the original insurer is no defense, in whole or in part, to a suit against the reinsurer. It is claimed on the part of the defendant that the condition in its policy is an exception to this position of the law. . . . The condition in that policy that 'in case of loss the company shall pay *pro rata* at and in the same time and manner as the reinsured,' cannot mean that in case of the insolvency of the Fulton company the defendant shall only be obliged to pay the *pro rata* of the dividends of the assets of said company, upon the claim of the first insured. It cannot have such application. The condition means that the defendant shall pay at and in the same time and manner as the reinsured company shall pay or be bound to pay according to its policy, and the defendant shall have all the advantages of the time and manner of payment specified in the policy of the Fulton company, otherwise the defendant's policy would not be the contract of indemnity intended, and endless litigation might ensue."

Bearing in mind what the contract of reinsurance, pure and simple, means, and how these contracts have been enforced in the past when some special language has been introduced in regard to the payment under a reinsurance policy, the question arises whether, by the use of the language of the eleventh subdivision, the contract of reinsurance, while still

bearing that name, has been so changed as to deprive it of its chief value. As is stated by Judge Johnson, in regard to the language used in 56 N. Y., *supra*, to give this language this construction, will, in substance, subvert the whole contract of reinsurance as hitherto understood. We agree with the court below, that the language of the eleventh subdivision, taken in connection with the fact that it is used in a contract designated by the parties as one of reinsurance, means that the reinsuring company shall not pay more than its ratable proportion of the actual liability payable on the part of the reinsured, after deducting all liability of other reinsurers.

To hold otherwise is to utterly subvert the original meaning of the term reinsurance and to deprive the contract of its chief value. The losses are to be payable *pro rata* with, in the same manner and upon the same terms and conditions as paid by the reinsured company under its contracts. This means that such losses, payable *pro rata*, are to be paid upon the same condition as are the losses of the insurer payable under its contract. And the liability of the reinsurer shall not be in excess of the liability of the insurer under its original contracts, after deducting therefrom any and all liability of other reinsurers of the contract of the insurer or of any part thereof. It is the ratable proportion for which the other reinsurers are liable, that provision is made for deducting, and the liability of the insurer means such liability after that deduction, and does not mean there must be an actual payment of such liability by the insurer before it can have any benefit of the contract of reinsurance which is made with defendant.

Subdivision 10 of the contract does not result in any different conclusion.

This subdivision does not and cannot mean that there is to be no liability unless the reinsured should pay the loss sustained. The reinsured company under its provisions is bound to forward to the reinsuring company a statement of the date and the probable amount of loss or damage, and it is provided that after the reinsured company shall have adjusted, accepted

proofs of, *or* paid such loss or damage, it shall forward the proof of its loss and claim and a copy of the receipt taken for payment. It means that if the loss or claim has been in fact paid, then a copy of the receipt is to be sent, but it does not mean that there must be payment before any liability on the part of the reinsuring company exists.

We do not think that the language of these two subdivisions was intended to entirely nullify and tear up by the roots the construction given to the contract of reinsurance for so many years throughout the civilized world and upon which its chief value is based. The nature of the contract is accurately described in its commencement. It is described as a "compact of reinsurance," and there has been no doubt as to the meaning of such contract for the last two centuries. The judgment of the Court of Appeals is right, and is

*Affirmed.*