PROVIDENCE–WASHINGTON FIRE INS. CO. et al. v. ATLANTA–
BIRMINGHAM FIRE INS. CO. et al.

(Circuit Court, N. D. Georgia.   January 11, 1909.)

1. INSURANCE (§ 684*)—INSURA^  ^E COMPANIES—INSOLVENCY—SETTLEMENT OF
ASSETS.
Where, after the appointment of a receiver for an insurance company,
an agreement was'eff cted by which the creditors agreed to accept 30
per cent. of their clai is in full, such agreement should be tre^ued as a
distribution of the ins'irance company's assets, and not a com)romise by
the insurance compan/ itself, in so far as it affected reinsur ince of the
company's risks.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1817; Dec.
Dig. § 684.*]

2. INSURANCE (§ 679*) — INSOLVENCY — "REINSURANCE" — "DOUBLE INSUR-
ANCE."
The term "double insurance" means an insurance of the same inter-
est, and is entirely different from "reinsurance," which is a contract of
indemnity to the person or corporation reinsured for the whole loss
sustained in respect to the subject of the insurance to the extent to
which he is reinsured.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1811; Dec. Dig.
§ 679.*
For other definitions, see Words and Phrases, vol. 3, pp. 2185, 2186;
vol. 7, pp. 6052, 6053, vol. 8, p. 7783.]

3. INSURANCE (§ 684)—REINSURANCE—COMPROMISE OF ORIGINAL CLAIMS—EF-
FECT.
Where, after an insurance company became insolvent as the result of
a fire and a receive: had been appointed, its creditors agreed to accept
30 per cent. of thei  proved claims in full settlement, reinsurers of the
insolvent company's risks were not thereby relieved of 70 per cent. of
the loss sustained under the reinsured policies, but were liable for the
full amount.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1817; Dec. Dig.
§ 684.*]

Smith, Hammond & Smith, for reinsuring companies.
McDaniel, Alston & Black, for receiver.

NEWMAN, District Judge.   The assets of the Atlanta-Birming-
ham Fire Insurance Company and its affairs are in this court for ad-
ministration, the company having failed on account of severe losses sus-
tained in the San Francisco fire in 1906.   The question has arisen as to
the respective rights of other insurance companies which had reinsured
the Atlanta-Birmingham Fire Insurance Company against risks taken
by it, and the rights of the Atlanta-Birmingham Fire Insurance Com-
pany against such companies for reinsurance given it by the other com-
panies.
The particular question here for decision is whether, in view of the
fact that the original insured only received from the assets of the
Atlanta-Birmingham Fire Insurance Company 30 per cent. of their
losses, that company may set off against other insurance companies
to which it is indebted, as stated, for reinsurance, the full amount of

its liability for the San Francisco losses, so far as covered by such re-insurance in other companies, prorated according to the amount the reinsurance may bear to the amount of the original insurance; or whether the Atlanta-Birmingham has the right only to claim as against such reinsuring companies 30 per cent. of the pro rata amount of such losses for which the reinsuring companies would otherwise be liable.

This question was before a special master, to whom the whole case had been referred. His report is as follows:

"To the Honorable Judges of the Circuit Court of the United States for the Northern District of Georgia:

"In pursuance of the order made and entered in this cause by which it was referred to me a special master, I do respectfully report that I have investigated the matter so referred to me, and having been attended by parties interested, and after taking due proofs, I find and report upon claims of insurance companies which had reinsured risks originally assumed by the Atlanta-Birmingham Fire Insurance Company, as follows:

"I divide these reinsuring companies into two classes: First, those companies which had claims against the Atlanta-Birmingham and where no set-off as against such claims is claimed by the Atlanta-Birmingham Insurance Company or its receiver.

"Facts. To each of the policies issued by the Atlanta-Birmingham to such company a slip was attached, and made part of the policy, to the effect that the policy covered 'On their interest as insurers under their policy No. ———, issued to ——————, for $———, as per form of policy below. Subject to the same risk, valuations, conditions, and adjustments as are or may be taken by the reinsured, and loss, if any, thereunder is payable pro rata with the re-insured and at the same time and place.'

"In these interventions, proof was made to me as to the amounts of payments by such companies, and I allowed such claims for the pro rata actual payments made, together with interest on such amounts from dates proofs of loss were filed with the Atlanta-Birmingham to December 5, 1906, when the receiver was appointed, and at the rate of 7 per cent. My findings in favor of these reinsuring companies are made on a separate paper attached hereto, headed 'Reinsurance Claims, Class A.' In the first column is the principal amount due each company; in the second column is the interest; and in the third, amount due Atlanta-Birmingham; and in the fourth is the total amount of principal and interest, and for which amount I find decree should be rendered in favor of each company in Class A.

"The second class embraces those companies which had claims against the Atlanta-Birmingham, and against which the Atlanta-Birmingham also had claims and claimed an offset. The policies issued by the Atlanta-Birmingham and those issued to it each contain the same reinsurance loss slip as is shown in the report as to Class A. This second class is shown by a separate paper attached hereto, marked 'Reinsurance Claims, Class B.' As to this Class B, I find in the first column the principal amount due each of said companies; in the second column, the interest due each in the same manner as in Class A. As against such sum I have allowed set-off in the column 'due A–B.' I deducted this set-off from the principal and interest due companies who had reinsured the Atlanta-Birmingham, and rendered judgment for the net balance, and the amount of such net balance is found in the column headed 'Net due them.' In fixing the amount of set-off, I charge against the respective companies the full pro rata amounts of the liabilities proved against the Atlanta-Birmingham on policies so reinsured by the Atlanta-Birmingham for such reinsuring companies.

"I have previously made my report as to the interventions of the direct San Francisco loss claimants, fixing the liability of the Atlanta-Birmingham to each of such claimants, and in said report I rendered judgment that such liabilities would be discharged in full when the receiver should pay to each of such claimants 30 per cent. of the principal of such several amounts so

allowed. This finding and judgment was based upon the agreed settlement in this cause. Such agreed settlement and the finding and judgment on such claims are here reported by me as part of the facts in these interventions, and is made a part of this report. Both the agreed settlement *and by*-report as to such direct San Francisco loss claimants are of file in the office of the clerk of this court in this cause, and need not be here set forth. My report as to the direct San Francisco loss claimants has been by this honorable court approved and made the decree of this court. Carrying out that decree or settlement with such claimants, the receiver has paid to each of the said claimants the sum of 30 per cent. of the amount fixed by me as 'the liability of the Atlanta-Birmingham to such claimants, and from each claimant has taken receipt in the following form, to wit:

"'Received of A. C. Sexton, receiver, $————, same being in full compromise and settlement of any and all claims of loss or damage under such policy and according to the agreement of settlement in the case of Providence-Washington Fire Ins. Co. et al. v. The Atlanta-Birmingham Fire Ins. Co. et al. in the Circuit Court of the United States for the Northern District of Georgia.

"'This ———— day of ——————, 1908.
                                    "'Attorneys at Law for ——————.'

"This form of receipt, with the blanks being properly filled, is stamped on the policy, and the policy surrendered to the receiver. I find, as a matter of law, that, the receiver having paid to such claimants such 30 per cent., the same is, in accordance with the agreed settlement, in full satisfaction and discharge of any and all claims of such creditors, of whatever character, against the Atlanta-Birmingham Fire Insurance Company, the Prudential Fire Insurance Company, the funds in the hands of the receiver, or the stockholders of either of the said companies.

"It was argued to me that because of such settlement and payment, and under the terms of the contract of reinsurance, the offset of the Atlanta-Birmingham against companies proving claims against it should be fixed at 30 per cent. of the pro rata liability of the liability established and allowed against the Atlanta-Birmingham by its original insured. I cannot accede to this proposition. While the Atlanta-Birmingham Fire Insurance Company has paid 30 per cent. of its liability, and by such payment has discharged such liability, nevertheless such payment and discharge was based on the agreement of settlement of all classes of creditors, and such settlement was made because the Atlanta-Birmingham Fire Insurance Company was insolvent, was in the hands of a receiver, and its assets were insufficient to pay and discharge all of its liabilities in full.

"I hold the 30 per cent. settlement to have been an agreement between the creditors of the Atlanta-Birmingham Fire Insurance Company as to the distribution of the assets in contradistinction to a compromise by the company itself. I hold, as matter of law, that the Atlanta-Birmingham is entitled to set off against claims proved against it the full pro rata amounts of the liabilities proved against it by its assured. Deducting the full liability proved against the Atlanta-Birmingham by its original assured from the amount of the principal and interest found to be due by the Atlanta-Birmingham Fire Insurance Company to companies reinsuring it, I find in favor of the claims in Class B for the respective amounts in the column under the heading 'Net Due Them.' That is to say, I allow claims to be proved against the Atlanta-Birmingham for the exact pro rata amounts paid by such companies reinsuring it. I allowed the Atlanta-Birmingham to set off against such claims the full pro rata amount of the liability proved against the Atlanta-Birmingham, and I report that decree should be entered for such net balances in favor of the claimants against the Atlanta-Birmingham. See full statement headed 'Reinsurance, Class B.'

"As authority for such ruling, I cite the following cases, to wit: Blackstone, Receiver, v. Allemannia Fire Insurance Company, 56 N. Y. 104; Consolidated Real Estate & Fire Insurance Company v. Cashon, 41 Md. 59; Philadelphia Trust, Safe Deposit & Insurance Company v. Fame Insurance Company, 9 Phila. (Pa.) 292; Eagle Insurance Company v. Lafayette Ins. Co.,

9 Ind. 443; Allemannia Fire Insurance Company of Pittsburg. Pa., Plaintiff in Error, v. Firemen's Insurance Company of Balto., 209 U. S. 326, 28 Sup. Ct. 544, 52 L. Ed. 815.

"(Signed)                  John M. Slaton, Special Master."

Exceptions have been filed to this report of the special master by the London & Lancaster Fire Insurance Company, the National Fire Insurance Company of Hartford, Conn., the Philadelphia Underwriters of Philadelphia, Pa., the Phœnix Insurance Company of London, England, and the Sun Fire & Marine Insurance Company. The exceptions, so far as necessary to show the contentions in the case, are as follows:

"(1) The above-named companies, and each of them, except to the conclusion of law of said special master, expressed by him in the following language, to wit:

" 'In fixing the amount of set-off I charge against the respective companies the full pro rata amounts of the liabilities proved against the Atlanta-Birmingham on policies so reinsured by the Atlanta-Birmingham for such reinsuring companies.'

"For ground of exception to said conclusion of law, these exceptors respectfully show that the report of said master in which said language occurs discloses that the Atlanta-Birmingham Fire Insurance Company compromised and settled all claims against it on said policies which it reinsured with these excepting companies at 30 per cent. of the principal amount of the claims established against it under said policies, and said compromise and settlement was carried into effect as to each of said policies by the payment of said 30 per cent., and such payment was acknowledged by each of the claimants under each of said policies to be in full compromise and settlement of any and all claims of loss or damage under said policies and each of them, and said policies were themselves surrendered and canceled, and no other or further claim of any character or description remains or exists in favor of any one of the claimants under any one of such policies against the said Atlanta-Birmingham Fire Insurance Company, or the funds in the hands of the receiver. Exceptors say that under the facts above cited, which are found and reported by the special master in said cause, the proper conclusion of law would have allowed a set-off against these exceptors in behalf of said Atlanta-Birmingham Fire Insurance Company of only 30 per cent. of the amounts actually allowed by said master as a set-off, according to his said report.

"(2) The above-named companies. and each of them, except to the conclusion of law of said special master, expressed by him in the following language, to wit:

" 'I hold as a matter of law that the Atlanta-Birmingham is entitled to set off against claims proved against it the full pro rata amounts of the liabilities proved it by its assured.'

"For grounds of exception to said conclusion of law, these exceptors respectfully show that the report of said master in which said language occurs discloses that the Atlanta-Birmingham Fire Insurance Company compromised and settled all claims against it on said policies which it reinsured with these excepting companies at 30 per cent. of the principal amount of the claims established against it under said policies, and said compromise and settlement was carried into effect as to each claimant under said policies by the payment of said 30 per cent., and such payment was acknowledged by each of the claimants under each of said policies to be in full compromise and settlement of any and all claims of loss or damage under said policies and each of them, and said policies were themselves surrendered and canceled, and no other or further claim of any character or description remains or exists in favor of any one of the claimants under any one of such policies against the said Atlanta-Birmingham Fire Insurance Company, or the funds in the hands of the receiver.

"Exceptors say that under the facts above recited, which are found and reported by the special master in said cause, the proper conclusion of law would have allowed a set-off against these exceptors in behalf of said Atlanta-Birmingham Fire Insurance Company ·of only 30 per cent. of the amounts actually allowed by said master as a set-off, according to his said report.

"(3) The above-named companies, and each of them, except to the conclusion of law of said special master, expressed by him in the following language, to wit:

" 'I allow the Atlanta-Birmingham to set off against such claims the full pro rata of the amount of liability proved against the Atlanta-Birmingham, and I report that decree should be entered for such net balances in favor of the claimants against the Atlanta-Birmingham.'

"For ground of exception to said conclusion of law, these exceptors respectfully show that the report of said master in which said language occurs disclosed that the Atlanta-Birmingham Fire Insurance Company compromised and settled all claims against it on said policies which it reinsured with these excepting companies at 30 per cent. of the principal amount of the claims established against it under said policies, and said compromise and settlement was carried into effect as to each claimant under said policies by the payment of said 30 per cent., and such payment was acknowledged by each of the claimants under each of said policies to be in full compromise and settlement of any and all claims of loss or damage under said policies and each of them, and said policies were themselves surrendered and canceled, and no other or further claim of any character or description remains or exists in favor of any one of the claimants under any one of such policies against the said Atlanta-Birmingham Fire Insurance Company or the funds in the hands of the receiver. Exceptors say that under the facts above recited, which are found and reported by the special master in said cause, the proper conclusions of law would have allowed a set-off against these exceptors in behalf of Atlanta-Birmingham Fire Insurance Company of only 30 per cent. of the amount actually allowed by said master as a set-off, according to his said report.

"(4) The above-named companies, and each of them, except to the conclusion of law of said special master, expressed by him in the following language, to wit:

" 'I hold the 30 per cent. settlement to have been an agreement between the creditors of the Atlanta-Birmingham Fire Insurance Company as to the distribution of the assets in contradistinction to a compromise by the company itself.'

"For grounds of exception to said conclusion of law, these exceptors respectfully show that the agreement (which agreement is a part of the record in this cause, and made a part of the master's report) had nothing to do with, and could not regulate or decide, the legal rights of the Atlanta-Birmingham Fire Insurance Company or its receiver as to what recovery the Atlanta-Birmingham or its receiver could make against debtors of the Atlanta-Birmingham Fire Insurance Company. Under the agreement of settlement the master was to determine what amount the Atlanta-Birmingham Fire Insurance Company owed to each of its policy holders in San Francisco claiming loss from it thereunder, and such creditors agreed to accept 30 per cent. of the amount found by the master to be due on their respective claims against the Atlanta-Birmingham Fire Insurance Company as full settlement and compromise of their respective claims against the Atlanta-Birmingham Fire Insurance Company."

The case has been argued on the exceptions to the master's report, and submitted.

Some months after this case was removed from the state court to the Circuit Court, the counsel for the receiver and other counsel interested, in order to avoid long and tedious litigation, which it was

evident from the mass of conflicting claims would result in the case, went to work to bring about a settlement among the various claimants to the funds in the hands of the receiver. The first and most important matter to be undertaken was some basis of settlement with San Francisco policy holders who had sustained losses by the great San Francisco fire. An agreement was finally reached with them by which they agreed to accept 30 per cent. of their proven losses in full of their respective claims. This basis of settlement being practically agreed upon, it was referred by the court to the special master in the case, and he, after hearing from all parties in interest, and after full consideration of the matter, reported to the court in favor of such settlement. Coincidently therewith, all other persons having claims against the Atlanta-Birmingham Fire Insurance Company, and against the assets in the hands of the receiver, agreed to accept for their claims respectively such per cent. as the remaining assets, after deducting costs and expenses, would pay. The settlement with the San Francisco policy holders was carried into effect, and they were all paid 30 per cent. of their proven losses, and signed the receipt set out in the report of the special master. The special master holds that this was an agreed settlement between the creditors of the Atlanta-Birmingham Fire Insurance Company as to the distribution of the assets, in contradistinction to a compromise by the company itself, and this holding of the master is clearly correct.

In view of the above, what are the rights of the Atlanta-Birmingham Fire Insurance Company against companies reinsuring for it these San Francisco risks? The contention earnestly made here, backed by able argument, is that the liability of the reinsuring companies to the Atlanta-Birmingham in this case, whatever may have been held under their facts in other reported cases, is 30 per cent. of the pro rata amount its reinsurance would bear to the original insurance, and not the pro rata of the total amount for which the Atlanta-Birmingham Fire Insurance Company was liable to the original insured.

In view of a recent decision of the Supreme Court of the United States, it is unnecessary to cite or to discuss former decisions. The case referred to is Allemannia Fire Insurance Company of Pittsburg v. Firemen's Insurance Company of Baltimore, to the Use of Wolfe, Receiver, 209 U. S. 326, 28 Sup. Ct. 544, 52 L. Ed. 815. The following is an extract from the opinion by Mr. Justice Peckham:

"The term 'reinsurance' has a well-known meaning. That kind of a contract has been in force in the commercial world for a long number of years, and it is entirely different from what is termed 'double insurance,' i. e., an insurance of the same interest. The contract is one of indemnity to the person or corporation reinsured, and it binds the reinsurer to pay to the person or corporation reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured. It is not necessary that the reinsured should first pay the loss to the party first insured before proceeding against the reinsurer upon his contract. The liability of the latter is not affected by the insolvency of the insured, or by its inability to fulfill its own contract with the original insured. The claim of the reinsured rests upon its liability to pay the loss to the original insured, and is not based upon the greater or less ability to pay by the reinsured. If the reinsured commenced his action against the reinsurer before he had himself paid the loss, the reinsured took upon himself the burden of making

out his claim with the same precision that the first insured would be required to do in an action against him. But there is no authority for saying that he must pay the loss before enforcing his claim against the reinsurer. These propositions are adverted to and enforced in Hone, etc., v. Mutual Safety Insurance Company, 1 Sandf. (N. Y.) 137, where the authorities upon the subject are gathered and reviewed at some length. The case itself was subsequently affirmed in the Court of Appeals in 2 N. Y. 235. See, also, Blackstone v. Allemannia Fire Insurance Company, 56 N. Y. 104. The same doctrine is held in Consolidated Real Estate, etc., v. Cashow, 41 Md. 59."

The opinion also quotes from Judge Blodgett in Ex parte Norwood, 3 Biss. 504, Fed. Cas. No. 10,364, which quotation embraces the following:

"Now, it is to my mind absurd to say, if a loss occurs on one of those reinsured policies, that the company primarily liable is to have its claim against the reinsuring company limited by its ability to meet its obligations to its original policy holders. The very object of making the policy of reinsurance was to place the company in funds with which to make its policy holders whole, and that is defeated if the construction which is insisted upon by the assignee is the true one."

The erroneous view upon which the argument for the reinsuring companies is based here, is shown by this short extract from the brief of counsel:

"The whole loss of the Atlanta-Birmingham to its assured was 30 cents on the dollar, and this has been discharged. After this agreement was made, it was bound to pay no more than 30 cents on the dollar. Its liability to pay was only 30 cents on the dollar. By such payment all other liability ceased, ended, and became fully discharged; its contract with the original assured became adjusted, settled, and paid. It owed no more on its losses to its assured."

This, in my judgment, is an incorrect view to take of the settlement between the Atlanta-Birmingham Fire Insurance Company and its San Francisco policy holders. The liability of the company to its policy holders was for the entire amount of the respective policies. This is what the company became liable for when it issued the policies, and this was what it owed after the loss occurred. This was its liability, which was settled by an agreement, as stated, between all the creditors, including these policy holders, by which the policy holders received 30 cents on the dollar of their claim. The language of the Supreme Court is:

"The liability of the latter (the reinsuring company) is not affected by the insolvency of the insured, or by its inability to fulfill its own contract with the original insured."

The liability of the Atlanta-Birmingham here, as stated, was the amount of the policy. The fact of the settlement by which the policy holders agreed to receive 30 cents on the dollar out of the assets in the hands of the receiver, in full of their claims, would not in any way alter the fact that its liability under its policies to the original insured was for the full amount of such policy.

I think the special master came to a correct conclusion on this question, and that all the exceptions to his report should be overruled; and a decree may be taken to that effect.