PINK, Superintendent of Insurance, v. FI-
DELITY & DEPOSIT CO. OF
MARYLAND.

District Court, S. D. New York.

July 9, 1936.

Eugene M. Clennon (Irvin Waldman, of New York City, of counsel), for plaintiff.

Hughes, Schurman & Dwight, of New York City (Ralph S. Harris, Harold L. Smith, E. Myron Bull, and William L. Wilkinson, all of New York City, of counsel), for defendant.

COXE, District Judge.

This is an action by the Superintendent of Insurance of the State of New York, as liquidator of Southern Surety Company of New York, against the defendant, to recover the sum of $3,522.71 with interest from November 17, 1933, upon a reinsurance agreement entered into between Southern Company, during its existence, and the defendant.

The case was tried by the court without a jury on an agreed statement of facts.

The Southern Company was organized in New York State and had authority to do a surety and insurance business. On March 22, 1932, it was declared insolvent by order of the Supreme Court of New York, its charter annulled, and title to its assets vested in the Superintendent of Insurance, with instructions to liquidate the company.

Prior to its insolvency, the Southern Company had in the regular course of its business issued its fidelity bond to one John De Martini Company, Inc., by which it bound itself to indemnify that company for any pecuniary loss which it might sustain through the fraudulent or dishonest acts of its employees during the term of the bond.

While the bond was in effect, John De Martini Company, Inc., sustained a loss of $7,045.41 as a result of the fraudulent and dishonest acts of one of its employees, for which it filed a proof of loss with the Southern Company. This claim was in the process of examination and investigation when the superintendent took charge, and the claim was thereafter allowed in the liquidation proceeding in the sum of $7,-045.41.

On the same day the Southern Company issued its fidelity bond to the De Martini Company, the defendant reinsured the Southern Company to the extent of one-half of its liability on the bond, not exceeding the sum of $5,000. This reinsurance was expressly made subject to the terms of a general reinsurance agreement existing between the Southern Company and the defendant, and it is on this agreement that the plaintiff now seeks to recover the sum of $3,522.71, which is one-half of the admitted liability of the Southern Company on its bond.

The defendant contends that under the terms of the reinsurance agreement, actual payment of the loss to the De Martini Company is a prerequisite to recovery, and that the defendant is then liable only to the extent of one-half of the amount actually paid. The plaintiff, on the other hand, insists that inasmuch as the Southern Company is in liquidation, the defendant is liable for one-half of the claim, irrespective of whether the plaintiff pays the claim in full or only a liquidation dividend thereon.

The question presented has been determined adversely to the contention of the defendant in a long line of decisions, which have consistently held that under an ordinary agreement of reinsurance, the obligation of a reinsurer is to indemnify the reinsured, not against payment actually made, but against liability actually incurred. Allemannia Fire Ins. Co. v. Fire-

716

men's Ins. Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948; Hicks v. Poe, 269 U.S. 118, 46 S.Ct. 29, 70 L.Ed. 187; Hone v. Mutual Safety Ins. Co., 3 N.Y.Super.Ct. (1 Sandf.) 137, affirmed 2 N.Y. 235; Blackstone v. Alemannia Fire Ins. Co., 56 N.Y. 104; Cashau v. Northwestern Nat. Ins. Co., Fed.Cas. No. 2,499; Fame Ins. Co.'s Appeal, 83 Pa. 396; Vance on Insurance (2d Ed.) pp. 942, 946.

In Allemannia Fire Ins. Co. v. Firemen's, Ins. Co., supra, Mr. Justice Peckham said at page 332 of 209 U.S., 28 S. Ct. 544, 546, 52 L.Ed. 815, 14 Ann.Cas. 948, as follows: "The term 'reinsurance' has a well-known meaning. That kind of a contract has been in force in the commercial world for a long number of years, and it is entirely different from what is termed 'double insurance,' i. e., an insurance of the same interest. The contract is one of indemnity to the person or corporation reinsured, and it binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured. It is not necessary that the reinsured should first pay the loss to the party first insured before proceeding against the reinsurer upon his contract. The liability of the latter is not affected by the insolvency of the insured or by its inability to fulfil its own contract with the original insured. The claim of the reinsured rests upon its liability to pay its loss to the original insured, and is not based upon the greater or less ability to pay by the reinsured."

The defendant attempts to distinguish these cases on the ground that the agreements are dissimilar. But a careful comparison of the present agreement with the agreement in Allemannia Fire Ins. Co. v. Firemen's Ins. Co., supra, discloses no essential difference in so far as the question under consideration is concerned. In the Allemannia Case, the payment clause provided that the reinsurer would in no event be "liable for an amount in excess of a ratable proportion of the sum actually paid to the assured." Yet the Supreme Court held that the receiver of the reinsured could recover without actual payment to the assured. The anologous clause of the present agreement provides that the reinsurer's proportionate share of a loss "shall be paid to the reinsured upon proof of the payment * * * by the reinsured." There is no substantial difference between these two provisions, even though the pres-

ent agreement requires "proof of the payment," where payment has been made.

I think, also, that the entire phraseology of the agreement indicates that no departure from the settled law of the Allemannia Case was intended. In the first place, the agreement itself declares that it is to be regarded "as an honorable engagement rather than as a mere legal obligation." Then, too, the reinsured is alone authorized to determine its liability on the bond, and settle all claims, subject to the right of the reinsurer later to show "that the alleged liability or any part thereof for loss under the bond exists or existed under some other bond or bonds given at any time by the reinsured." Finally, it is provided that no action shall be brought against the insurer "unless brought within twelve months after the date of the final settlement of all obligations under the bond." Surely, if it had been intended to make actual payment of the claim a prerequisite to recovery where the reinsured was in liquidation, it is reasonable to suppose that unequivocal language to that effect would have been used. I hold, therefore, that the words "proof of the payment" mean either proof that the reinsured has paid or is "bound to pay according to its policy." Cashau v. Northwestern Nat. Ins. Co., supra.

There may be a judgment for the plaintiff for $3,522.71, with interest from November 17, 1933, together with costs.