**PINK, Superintendent of Insurance, v. FIDELITY & DEPOSIT CO. OF MARYLAND.**[*]

No. 256.

Circuit Court of Appeals, Second Circuit.

March 8, 1937.

*Writ of certiorari granted 57 S.Ct. 939, 81 L.Ed. —.

Hughes, Schurman & Dwight, Ralph S. Harris, E. Myron Bull, William L. Wilkinson, and Harold L. Smith, all of New York City, for appellant.

Alfred C. Bennett, of New York City (Irvin Waldman, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment entered upon stipulated facts in an action to recover upon an agreement of reinsurance. The plaintiff is the liquidator of an insolvent surety company, and it is agreed that the agreement would cover the loss for which he sues, if it had been paid, which of course it has not and never will be. The only question is whether the defendant's promise was limited to indemnifying the reinsured—the insolvent com-

pany—for losses actually paid by it. Both sides agree that the reinsured's insured—the person suffering the loss—has no recourse over against the reinsurer, the defendant, and it follows that any recovery will be for the benefit of all the reinsured's creditors, an asset to be distributed in liquidation.

The agreement incorporated the "Standard Form of Reinsurance Agreement" adopted by the Surety Association of America on January 15, 1930, which was in turn an amendment of an earlier form, prepared in 1915. The record does not say what the Surety Association of America was, but we do not step beyond permissible limits of judicial notice when we assume that it was a group of companies engaged in the same business as both the companies here in question. The form begins with a promise to "reinsure * * * against loss * * * as hereinafter defined," upon which follow the conditions to which "the foregoing agreement is subject." The fourth article of these provides that "the Reinsured, upon the receipt * * * of a notice of any claim or loss, * * * shall give the Reinsurer prompt written notice," but the reinsured shall decide whether it is liable for the amount, and shall settle the claim or defend against it, and its action shall conclude the reinsurer. Then follow the critical words: "The Reinsurer's proportionate share of a loss * * * shall be paid * * * upon proof of payment * * * by the Reinsured and upon delivery to the Reinsurer of copies of all essential documents concerned with such loss and costs and the payment thereof. The Reinsured may, however, give the Reinsurer written notice of its intention to pay the loss at a certain date, and may require the Reinsurer to have its share of such loss in the hands of the Reinsured by such date"; though the reinsurer may if it chooses pay its share direct to the insured. There are other provisions, as for example those relating to the apportionment of any collateral, which go to confirm the conclusion that the agreement did not subject the reinsurer to any liability except for a loss actually paid by the reinsured; but we need not consider them because we shall take it arguendo—and indeed we cannot see how it could be taken otherwise—that, as a new question, payment of the loss was a condition upon the reinsurer's obligation. Were it not for circumstances which seem to us conclusive, we should have felt ourselves obliged to read the promise in the defendant's sense.

The controlling fact is the decision of the Supreme Court in Allemannia Ins. Co. v. Firemen's Insurance Co.; 209 U.S. 326, 28 S.Ct. 544, 545, 52 L.Ed. 815, 14 Ann. Cas. 948, in which there was a clause on whose similarity to, and difference from, the fourth article of the agreement in suit the result at bar must turn. The reinsured undertook in the tenth article of the agreement before the Supreme Court, upon receiving notice of any loss or claim promptly to advise the reinsurer, and promised that, after it had "adjusted, accepted proofs of, *or* paid such loss or damage, it shall forward * * * proof of its loss and claim * * * together with a copy of the original proofs and claim under its contract reinsured, and a copy of the original receipt taken upon the payment of such loss." The use of the particle, "or," seemed indeed to say that the reinsured might recover without paying the claim—that is, by only adjusting the loss or accepting proofs of it; but it is hard to see how the reinsured could in that event present a copy of a receipt for payment. Be that as it may, the eleventh article of the agreement concluded as follows: "in no event shall this company be liable for an amount in excess of a ratable proportion of the sum *actually paid* to the assured or reinsured by the reinsured company." That certainly precluded taking the disjunctive as giving the reinsured any option. The court's general reasoning was that reinsurance was an old and familiar transaction; that its incidents were well understood; and that the authorities who had discussed it had uniformly treated the reinsurer's liability as conditional, not upon the reinsured's loss, but upon his liability. The opinion then dealt at some length with a "pro rata clause" in the eleventh article; but somewhat strangely, ignored the accompanying language which we have just quoted, and which was much more compelling. It dismissed the tenth article by italicizing the conjunction, "or," and declaring that the requirement as to forwarding a copy of the receipt was to be allocated solely to cases where the reinsured has paid. The opinion concluded that the two clauses could not mean "to entirely nullify and tear up by the roots the construction given to the contract of reinsurance for so many years throughout the civilized world and upon which its chief value is based. The nature of the

contract is accurately described in its commencement. It is described as a 'compact of reinsurance;' and there has been no doubt as to the meaning of such contract for the last two centuries." 209 U.S. 326, at .page 337, 28 S.Ct. 544, 548, 52 L.Ed. 815, 14 Ann.Cas. 948.

The defendant quite naturally bears heavily upon the court's reliance upon the disjunctive; and if the case at bar arose over a contract written before 1908 we might yield to that difference, regardless of the passage in the eleventh article which we have quoted, and which the court apparently did not consider; though even then the general language would remain a powerful reason the other way. But the contract at bar was prepared long after that decision was rendered. In 1915 a new "standard form" had been prepared, as we have said; it was almost literally the same as the form of 1930; and while neither form took the agreement which had been before the Supreme Court as a model, the substance of each was the same except for the change to the copula. That difference was certainly not enough to show any change in intent, if we assume that the decision was before the draughtsmen of the form of 1915 or of 1930; for it is quite impossible that they should in that event have contented themselves with so uncertain and slight a substitution. It is not therefore a question of following the dicta of an opinion; no careful draughtsmen, who wished another result, would .have left so at large a document prepared for general use in all such transactions. On the other hand, it is scarcely possible to suppose that when the forms were prepared, they did not know of the decision. The record does indeed say nothing about the preparation of either form; all we know is that these companies chose to adopt it, and that it was the product of some kind of association of surety companies to which they belonged. Perhaps it goes too far to suppose that such a body acquaints itself with the decisions of every state; for this reason we forbear relying upon Globe National Fire Insurance Co. v. American Bonding & Casualty Co. (1923), 198 Iowa, 1072, 195 N.W. 728, 200 N.W. 737, 35 A.L.R. 1341, which construed the very form of 1915 adversely to the defendant, though it is probable that that decision also was known. But to say that the only decision of the Supreme Court upon the point was not known or was not regarded, seems to us to pass any reasonable possibility.

The defendant seems to think that the result unjustly enriches the plaintiff; but this is not true. It does indeed go to swell the funds available to pay its creditors in general, but by no chance can the shareholders profit. The defendant certainly did undertake to accept the hazard of the loss, and why it should be able to interpose as a condition the continued ability of the reinsured to meet its part of the obligations, is not clear. Of course if it so stipulated, it may insist; but it must stand upon its contract, no general considerations of equity make in its favor.

Judgment affirmed.