## CHICAGO TITLE & TRUST CO. v. FOX THEATRES CORPORATION.

### Claim of PHILADELPHIA CO.
### No. 387.

Circuit Court of Appeals, Second Circuit.
July 26, 1937.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham and J. Collier Weeks, both of New York City, of counsel), for appellants.

Basil O'Connor, of New York City (Herbert R. Berk, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In June, 1932, equity receivers were appointed for Fox Theatres Corporation (hereafter called Fox). In the receivership proceedings Philadelphia Company for Guaranteeing Mortgages (hereafter called Philadelphia Company) filed its claim as a contract creditor. While the claim was pending, receivers were appointed for Philadelphia Company in a proceeding in Pennsylvania, and they were permitted to file amendments to its claim. The last amendment, filed November 19, 1934, stated the claim to be for $389,436.90. It was allowed in the sum of only $48,134.06, and from this order the receivers of Philadelphia Company have appealed. Mortgage Service Company, appointed in Philadelphia Company's reorganization proceedings as operating trustee for creditors, intervened below and has also appealed.

The correctness of the order appealed from turns upon the meaning and effect of a written contract made by Fox with Philadelphia Company in October, 1930. This necessitates a statement of the circumstances under which the contract was executed.

Market-Seventeenth Streets Corporation (hereafter called Market), a majority of whose stock was owned by Fox, desired to borrow a large sum of money upon its bond and mortgage. The lender insisted that payment of the mortgage be guaranteed. Philadelphia Company was willing to issue its policy of guaranty, if Fox would give assurance that Market would promptly pay interest and taxes on the mortgage and premiums on Philadelphia Company's policy. Accordingly, four instruments were executed and delivered, all bearing date October 25, 1930, except the guaranty policy which was dated October 28, 1930: (1) Market obtained a loan of $1,800,000 and gave to the lender its bond, secured by its mortgage upon Pennsylvania real estate, for a like sum payable five years after date, with interest at 6 per cent. per annum payable semiannually. The bond

and mortgage also bound Market to pay taxes and other charges against the mortgaged property and provided that, in the event of a thirty-day default in payment of interest or taxes, the mortgagee might, at its option, declare the principal debt immediately due. (2) Market and Philadelphia Company executed a contract by which the latter agreed to guarantee the bond and mortgage and Market agreed to pay to Philadelphia Company $27,000 forthwith, representing three years' premium in advance for its policy, and $9,000 yearly in advance thereafter during the life of the policy. (3) Fox and Philadelphia Company executed a contract by which, in consideration of the issuance of said policy, Fox "does hereby guarantee" unto Philadelphia Company for the term of said bond and mortgage "the payments of" (a) the interest thereon when due; (b) property taxes assessed against the mortgaged premises before the first day of July in each year; (c) corporation taxes assessed against Market within thirty days after they become payable; and (d) premium for guaranty when due under Philadelphia Company's agreement with Market. This contract contained a provision that, in case Fox should fail to pay or cause to be paid any of the agreed payments, judgment might be confessed "for all sums or charges then due and unpaid" by Fox "under the terms of this Agreement." (4) Philadelphia Company delivered its policy guaranteeing to the mortgagee payment of interest within five days after it shall become due by the terms of the bond and mortgage, and payment of the principal when collected, but in any event within eighteen months after it shall become due under the bond and mortgage. Philadelphia Company was made the agent of the mortgagee to collect interest and principal as it fell due.

Beginning with the installment of interest falling due on October 25, 1932, Market has been continuously in default in respect to interest and taxes. The mortgagee, however, did not elect to accelerate the maturity of the principal debt, nor take steps to foreclose the bond and mortgage or to hold Philadelphia Company liable on its guaranty. On November 19, 1934, when Philadelphia Company's third amended claim was filed in the District Court, Market's defaults under the bond and mortgage amounted to $371,436.90; and in addition Market owed Philadelphia Company $18,000 as premium for the fourth

and fifth years of the guaranty. None of Market's defaults had been made good by Fox. The claim against Fox was filed for the sum of the above-stated figures, namely, $389,436.90. But Philadelphia Company had actually paid out only $30,-134.06 on account of Market's defaults; and the District Court allowed the claim for only the sum paid out by Philadelphia Company plus the $18,000 premium. Disallowance of the balance of the claim is what the appellants complain of. Specifically, the question on appeal is whether a guarantor of a mortgage indebtedness, upon which the mortgagor later defaults, has a right to recover from one who gave a "guaranty" to the guarantor indemnity for money expended or the full amount of the guarantor's liability. The issue is of special moment in the case at bar because both Fox and Philadelphia Company are insolvent.

■ The question for decision is the meaning to be ascribed to Fox's contract with Philadelphia Company. This turns upon the expressed intention of the parties and is to be determined by the words the parties have used, interpreted in the light of the circumstances under which they chose them. The words are "guarantee the payments" by Market at definite dates, of interest, taxes, and premiums. The appellants contend that these words, used in connection with the transactions on foot, were appropriate to impose the liability of a technical guaranty and were intended to require Fox to pay to Philadelphia Company the various sums with respect to which Market defaulted. The appellee, on the other hand, argues with equal zeal that the parties could only have intended that · Fox would indemnify Philadelphia Company against actual losses it might sustain because of Market's defaults. In a three-party transaction when S, a surety, "guarantees" C, the creditor, that P, the principal debtor, will perform his undertaking, the damage which the creditor sustains upon the principal's default is the value of P's performance. The assurance by S to C that P would perform is equivalent to promising that, if P does not, S will. Such is the typical guaranty or suretyship situation, imposing upon the guarantor the obligation to perform the act which the principal debtor should have performed, in case he defaults. With respect to premiums, Fox's promise exactly fits that category, for Market had promised to pay them to Philadelphia Company, Fox had

given assurance that performance would be made, and Philadelphia Company's damages from Fox's breach of its promise was the amount of the premiums. So the District Court held, and no one has appealed from this part of the order.

■ With respect to interest and taxes the situation is somewhat different. Market's obligation to make these payments ran to the mortgagee, not to Philadelphia Company. It is true that the mortgagee had given Philadelphia Company a power of attorney to collect the interest payments, and to conduct actions to enforce Market's obligations, including the payment of taxes, as stipulated in the bond and mortgage, but this did not place Philadelphia Company in the position of a creditor of Market; it was merely the agent of Market's creditor. Hence Market's defaults in paying interest and taxes did not deprive Philadelphia Company of any performance owing from Market to it, and will result in damage to Philadelphia Company only if the latter is compelled to pay the mortgagee. Similarly, the breach of Fox's promise that Market will pay interest and taxes to the mortgagee and the taxing officials respectively will result in damage to Philadelphia only on the same contingency. In such a situation it may be argued that Fox would be more likely to give Philadelphia Company a promise of indemnity against loss rather than against liability. Yet it would be possible for Philadelphia Company to insist upon obtaining the assurance which a promise of the latter type would give, and there are several considerations which tend to support the view that this is what the parties intended.

■■ In the first place, the language of the contract makes no distinction between guaranteeing payment of premiums and payments of interest and taxes. As to the former a technical guaranty was plainly intended, as already explained. Apparently the parties considered the various "guaranteed" payments as all alike. The provision respecting confession of judgment is significant in this respect. It provides that, if Fox shall omit to pay or cause to be paid any of the "payments as herein provided," then "upon averment of default and assessment of damages duly filed" judgment may be entered against Fox "for all sums or charges then due and unpaid * * * under the terms of this Agreement." This seems to presuppose that Philadelphia Company is to have judgment for

the full amount of Market's defaults without reference to whether Philadelphia Company has expended money to make them good. In the next place, the transactions in connection with which the contract was drawn, make appropriate an agreement for exoneration rather than indemnity against loss. Philadelphia Company was to guarantee the principal and interest on Market's bond. As to the principal, the mortgaged land furnished security, and, since Philadelphia Company had eighteen months after maturity of the mortgage before it could be called upon under its guaranty policy, it required no assurance by Fox that the principal would be paid. As to interest, however, it could be called upon to put up its own money within five days after the interest date, if Market should default. The interest amounted to $54,000 every six months. Philadelphia Company wanted assurance that it would not have to advance such sums from its own resources. It therefore demanded a guaranty that, if Market failed to provide the money, Fox, the parent corporation, would. As already explained, Market's default would cause Philadelphia Company no actual loss until the latter was compelled to pay the mortgagee. Before payment a surety may not maintain an action at law against the principal debtor; but in equity the rule is otherwise. Upon maturity of the debt a surety has an equitable right to exoneration from the debt and may call upon the principal to discharge it. Admiral Oriental Line v. United States, 86 F.(2d) 201, 204 (C.C.A. 2), and cases there cited. Fox was to "guarantee" payments by Market, and Philadelphia Company was to have the right to look to Fox for any performance which Market failed to make. Since Market owed Philadelphia Company the equitable duty of exoneration from liability for interest payments, Fox's guarantee may reasonably be construed as an assumption of a similar duty of exoneration. Philadelphia Company was in the business of insuring mortgages. By its contract with Fox it, in effect, reinsured part of its risk (liability for interest). A contract of reinsurance gives the insurer a right to payment by the reinsurer, although the loss has not been paid to the insured. Allemannia Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948; Hicks v. Poe, 269 U.S. 118, 46 S.Ct. 29, 70 L.Ed. 187. Both the language of the Fox contract and the circumstances under which it was made require, we think, that it be construed as a promise by Fox to pay the interest money, if Philadelphia Company incurred liability. Schneck v. Lewis, 121 Misc. 370, 201 N.Y.S. 282, affirmed 210 App.Div. 845, 206 N.Y.S. 958, involved a similar situation. Schneck had guaranteed a lessee's performance of a lease, and Lewis had "guaranteed" to Schneck performance of the terms of the lease. This was construed as an agreement by Lewis to indemnify Schneck against liability and not merely against loss. It is true that Schneck had paid the rent to the lessor before he sued Lewis, but such payment was not made until after Lewis had filed a petition in bankruptcy. For installments of rent accruing prior to bankruptcy Schneck was denied recovery because his right was barred by Lewis' discharge in bankruptcy. This was a holding that Schneck had a provable claim against Lewis at the date of petition filed, although Schneck had not yet paid the rent; that is, Lewis' liability became fixed and absolute as soon as the lessee defaulted in a payment of rent.

The argument as to taxes is not quite so strong. Philadelphia Company's policy guaranteed to the mortgagee payments of interest and principal; there was no obligation on the guarantor to advance money for tax payments. But Market's failure to pay them would impair the mortgage security upon which Philadelphia Company was relying for payment of the principal of the guaranteed debt. Consequently, it wanted assurance that Fox would pay them if Market failed to do so. Fox's guaranty treated tax payments in the same category as interest and premiums, and should be similarly construed as a promise to produce the money for taxes, if Market should default.

■ Having concluded that Fox's contract with Philadelphia Company was of the character above described, their respective rights and liabilities must be determined by its terms. The fact that later each became insolvent is immaterial both on the issue of construction and on the issue of Fox's liability. Compare Allemannia Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326, 332, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948; Pink v. Fidelity & Deposit Co., 88 F.(2d) 630 (C.C.A.2).

■■ Many of the items of liability making up Philadelphia Company's claim relate to payments upon which Market and Fox defaulted after February 15,

1933. The appellee's brief states that this was the date set for filing claims by a "bar order," and the contention is made that so much of the claim as was contingent on this date must be disallowed. It is doubtful whether this question is properly raised on the record. The transcript contains no reference to any bar order; it recites merely that all amended proofs of claim were filed pursuant to orders of the District Court after due notice to Fox. But on the assumption that a bar order originally set February 15, 1933, as the date for filing claims, there is no merit in the contention. The practice of entering an interlocutory order limiting the time within which claims of creditors must be presented has developed as an aid to convenient administration; it does not preclude the court from permitting a creditor whose claim is thereafter presented to share in the distribution of assets still on hand, as has been often explained. See People of New York v. Hopkins, 18 F.(2d) 731, 732 (C.C.A.2). There is nothing in the record indicating any abuse of discretion in lifting the bar order in favor of the appellants. When their claim was presented and proved, the amount of it was definite and dependent upon no contingency. It was therefore allowable. Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721, 747 (C.C.A.2).

For the foregoing reasons the order disallowing in part the third amended claim must be, and is, reversed.