JACOB SCHNECK, Plaintiff, *v.* NAT LEWIS, Defendant.

Supreme Court, New York County, August, 1923.

Indemnity — agreement to indemnify guarantor of rent — bankruptcy — when rent accruing subsequent to bankruptcy not a provable debt — Bankruptcy Act, section 63-a.

A five-year lease from May 1, 1921, rent payable in advance in equal installments on the first day of each and every month during the term having been executed, the plaintiff by a writing inserted in the lease and signed by him agreed that if the tenants did not pay the rent as agreed he would on demand pay it to the landlord not later than the fifteenth day of each month. By a writing dated June 1, 1921, and reciting the above guaranty of payment and that a named person had on that day succeeded the tenants, the defendant agreed to hold the plaintiff " safe and harmless from any loss and damage that may arise in relation to said lease " and thereby guaranteed the performance of the lease pursuant to its terms, etc. The tenants paid the rent up to December, 1921, and on the fifth day of that month a petition in bankruptcy was filed against defendant and the tenants, a firm which by that date had come to include defendant as a partner, which firm then held the premises under said lease. The adjudication in bankruptcy was made on December 31, 1921, and the defendant received his discharge on March 28, 1923. In an action upon the indemnity agreement to recover rent for the months up to and including December, 1922, and for water meter rates, all of which plaintiff had paid pursuant to an agreement made with the landlord after it had sued plaintiff on his agreement for the rent of December, 1921, and January, 1922, as well as for certain water meter charges, with an additional sum for interest, the defendant pleaded his discharge in bankruptcy as a defense, it being conceded that plaintiff's claim had been scheduled in the bankruptcy proceeding. *Held*, that the tenants' obligation to pay rent for the months subsequent to December, 1921, was not " a fixed liability absolutely owing," etc., and being too contingent as to its accrual when the petition in bankruptcy was filed such obligation was not and could not become a provable debt within the meaning of section 63-a of the Bankruptcy Act.

The defendant's guaranty under his written agreement was to indemnify against liability and not merely against loss, and in relation to the rent for the month of December, 1921, was a debt provable against the defendant's estate in

bankruptcy, as were also the water meter charges, which were respectively due and payable on November 1, 1921, and December 1, 1921, and the item for interest, and as to such claims the defense pleaded was sufficient and except in relation thereto plaintiff was entitled to judgment.

The case presenting a federal question within the territorial jurisdiction of the federal district court as to the correct interpretation of section 63-a (1) and (4) of the Bankruptcy Act, upon which question the decisions of the federal courts are in conflict, the doctrine of *Matter of Roth & Appel*, (U. S. Circuit Court of Appeals, 2d Circuit) 181 Fed. Rep. 667, held to govern in the present case in the absence of a contrary decision of the state courts.

ACTION on indemnity agreement.

*Aaron Wm. Levy*, for plaintiff.

*Pierce & Hopkins* (*Louis P. Brown*, of counsel), for defendant.

GAVEGAN, J. This action was tried without a jury, decision being reserved.

Sued on an indemnity agreement, defendant relies on his discharge in bankruptcy as a complete defense.

By an instrument dated April 8, 1921, the Lower Broadway Realty Corporation made a lease, expressed as running to L. Kory & Co., of office space in the building known as No. 42 Broadway, for a term of five years from May 1, 1921, at the yearly rental of $11,200, payable in equal monthly payments in advance on the first day of each and every month.

On the front page of the lease there is a typewritten insertion signed by plaintiff and reading as follows:

" I hereby agree to pay to the Lower Broadway Realty Corporation, on demand, the amount due each month, in advance, on this lease, not later than the fifteenth day of every month, in case the same is not paid by Mr. Kory, the lessee mentioned in the lease, and signor thereof.

" I further agree that the above mentioned lessee will abide by all the rules and regulations contained in this lease.

"(Signed) J. SCHNECK."

The lease is signed for the tenant " Louis Kory & Co." and " L. Kory Co."

By an agreement dated June 1, 1921, and reciting that plaintiff " has guaranteed in writing the performance on the part of Louis Kory and Emil Stein, co-partners transacting business as Kory & Company, of the terms and conditions of a certain lease affecting the suite of offices in the premises known as No. 42 Broadway which lease bears date about the 15th day of April 1921," and that Louis Kory had that day succeeded Kory & Co., defendant agrees " to hold the party of the seocnd part [plaintiff] safe and

harmless from any loss and damage that may arise in relation to said lease and hereby guarantees the performance of the terms of said agreement of lease pursuant to the terms thereof and agrees to defend any action that may be brought against the party of the second part upon said lease or for breach of any of the covenants thereof at his own expense and to pay any judgment or judgments that may be recovered against the party of the second part by reason thereof."

Defendant raises no question as to the binding effect upon him of this agreement, termed the " indemnity agreement," its execution, or as to its applicability and relationship to the lease mentioned above. Nor is there raised any question but that the firm which, as presently stated, went into bankruptcy was obligated, as lessee, to pay the stipulated rent to the end of the term stated in the lease.

On or about December 5, 1921, a petition was filed in bankruptcy against defendant and the tenants, a firm which by that date had come to include defendant as a partner and which then held the demised premises under said lease. This firm is referred to in the record here as Kory & Co. An adjudication in bankruptcy against said alleged bankrupts was made December 31, 1921. Defendant was discharged in bankruptcy on March 28, 1923. It is conceded that plaintiff's claim was scheduled by defendant.

The rent accruing under said lease was paid by the tenants up to and including the month of November, 1921.

The landlord sued plaintiff on his said agreement for the December, 1921, and the January, 1922, rent as well as for certain water meter charges. Subsequently plaintiff and the landlord entered into a formal contract by which plaintiff agreed to pay the rent for the said two months and for February, March and April, 1922, in full, as in the lease provided, together with water meter charges due respectively November 1, 1921, and December 1, 1921, and thereafter $225 per month, up to and including the month of April, 1926, the landlord agreeing to accept same in full discharge of plaintiff, to take back the premises, and to give plaintiff the benefit of any surplus obtained by reletting, pursuant to a stated agreement. Plaintiff was also given the claim for compensation for occupancy of the demised premises following the failure of said firm, the usual claim for occupancy by the receiver or trustee in bankruptcy.

No question as to such offset or claim arises. They are not referred to in the record. Other provisions in the agreement are likewise of no importance to us now.

. Plaintiff seeks to recover in this action the amounts paid by him, pursuant to the agreement last mentioned, for the months up to and including December, 1922, and for the water meter rates, altogether $6,526.13, as well as $458.92 in addition for interest. No reference is made to the months subsequent to December, 1922.

Defendant points out that the meter charges and the payments for all the months from December, 1921, to December, 1922, which plaintiff seeks to recover in this action, came due before the expiration of the year following the adjudication in bankruptcy, in ample time for plaintiff to prove against defendant's estate for what plaintiff paid thereon, he having made the last of said payments on December 5, 1922. If plaintiff's claim was provable in defendant's bankruptcy, it was discharged. If it was not provable the discharge pleaded is no defense. We must look to section 63a, (1) and (4), of the National Bankruptcy Act to ascertain whether it was provable.

But we are confronted with conflicting decisions in the federal courts, interpreting said subdivisions 1 and 4, which so far as pertinent now, read as follows: " Section 63. · Debts which may be proved.— *a.* Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, * * * absolutely owing at the time of the filing of the petition against him, whether then payable or not * * *; (4) founded upon an open account, or upon a contract, express or implied."

Defendant relies on *Moch* v. *Market St. Nat. Bank,* 107 Fed. Rep. 897; *Matter of Smith,* 146 id. 923; *Matter of Dunlap Carpet Co.,* 163 id. 541; *Matter of Caloris Mfg. Co.,* 179 id. 722, and related cases.

At the outset we must distinguish pointedly between the application of the doctrine of those cases under the facts here and its application to the provability of claims arising under contracts which do not relate to the payment of rent for realty. Fundamentally we are to consider the provability of a claim for rent of realty accruing after the filing of a petition in bankruptcy, which rent the bankrupt contracted to pay for a part of the term subsequent to such filing. In applying section 63a of the National Bankruptcy Law, the cases referred to above do not put a claim for rent of the particular character stated in a special classification. Some of them relate to such a claim and some of them do not, but they all proceed without reference to the distinction which, as has been indicated, we must have in mind. This is incumbent on us because we thereby keep clearly before us the point of divergence between the precedents referred to above and those

on which plaintiff relies, and also because we shall thereby be led to see clearly that the case in our Appellate Division which defendant cites is not in point.

The same course will also make clear to us that we are not now interested in much of what has been said in discussing said section 63a, the controversy as to whether subdivision 4 is affected by limitations expressed in subdivision 1.

Of these conflicting decisions the leading case on one side is *Moch* v. *Market St. Nat. Bank, supra,* decided in the United States Circuit Court of Appeals for the Third Circuit. The leading case on the other side is *Matter of Roth & Appel,* 181 Fed. Rep. 667, decided in the United States Circuit Court of Appeals for the Second Circuit. It affirmed an order of the District Court of the United States for the Southern District of New York.

In the case last mentioned it was held that a claim for rent of the character indicated above is not a debt before the rent day; that " * * * the obligation upon the rent covenant is altogether contingent " (669) in relation to rent to accrue; and that such a claim is not provable in bankruptcy. It is pointed out that it was not provable under previous bankruptcy acts though they expressly permitted proof of contingent demands.

Accordingly, the opinion in that case goes on to state (at p. 673): " * * * it is not necessary in order to reach a decision in this case, to determine whether 63a(4) is subject to the limitation contained in 63a(1)." That it is not so subject is the burden of much of the discussion in the cases on which defendant relies. Thus it is more clearly seen, that if we are to be governed by the doctrine of *Matter of Roth & Appel, supra,* we are not concerned with that discussion, but are governed by a rule relating to claims for rent for land of the kind stated.

Thus also it is seen why said rule does not imply that all contractual claims, perfected after the inception of bankruptcy proceedings, are to be excluded from participating in dividends. For example, in *Matter of Roth & Appel, supra,* it is said (at p. 673), referring to the *Moch* case and some cases following it: " It is not necessary * * * that we should go so far as to dispute the conclusions reached in these decisions." When, therefore, our Appellate Division, in *Manheim* v. *Loewe,* 185 App. Div. 601, referred to the same cases, it did not imply that the doctrine of *Matter of Roth & Appel* was to be rejected. In fact its rule is radically harmonious with that applied by the Appellate Division in *Witthaus* v. *Zimmermann,* 91 App. Div. 202. If, for the reasons set forth in *Matter of Roth & Appel,* we hold that a claim for rent of the kind stated is not provable in bankruptcy, that will not

warrant an inference that we should hold an indorser may not prove the amount he pays on negotiable paper because it comes due after the commencement of bankruptcy proceedings against the person ultimately liable. No such inference is warranted because the decision in that case is based on the nature of a contract to pay rent for land and is strictly limited accordingly.

The case of *Matter of Roth & Appel* was decided by the Circuit Court of Appeals in our local circuit, on an appeal from a decision of the United States District Court of our district. We have involved here a federal question arising within the territorial jurisdiction of that federal district court. In the absence of a contrary decision in our state courts, the doctrine of *Matter of Roth & Appel* governs us now. A similar reason was advanced in *Matter of Caloris Mfg. Co.*, 179 Fed. Rep. 722, for following the case of *Moch v. Market St. Nat. Bank* in the circuit where it was decided. At page 723 McPherson, J., referring to the case of *Matter of Roth & Appel, supra*, in the District Court, said: " The referee disallowed the claim on the authority of *Re Roth and Appel* (D. C.) 174 Fed. 64, and the decision undoubtedly sustains his position. I cordially agree with Judge Hough that the conflicting decisions on this subject are in a state of ' hopeless confusion.' " He then went on to say that he would follow the *Moch* case because it " governs the District Courts " of his circuit.

Furthermore the *Roth & Appel* case has been referred to by the Supreme Court of the United States without disapproval, to say the least. In *Central Trust Co.* v. *Chicago Auditorium*, 240 U. S. 581, at 590, it is said that cases arising out of the relation of landlord and tenant " are distinguishable, because of the ' diversity between duties which touch the realty, and the meere personalty.' Co. Litt., 292, b, section 513." See, also, *Zavelo* v. *Reeves*, 227 U. S. 625, 632.

Defendant's agreement is to indemnify plaintiff in relation to the tenants' obligation to pay rent. If we exclude from consideration, for the present, the rent for December, 1921, and the water rates, defendant was not obligated to indemnify plaintiff as to a debt provable within said section 63a. The tenants' obligation, in relation to months subsequent to December, 1921, was not and could not become a provable debt. This is according to the doctrine of *Roth & Appel* and, as there explained, is because it was not a fixed liability absolutely owing and was too contingent as to its accrual, when the petition was filed.

The contingent character of the obligation against which defendant indemnified plaintiff is necessarily imparted to defendant's obligation to indemnify. He indemnified according to the obliga-

tion of the primary debtor. If the primary debtor did not become obligated, he could not become liable on the promise to indemnify. This obligation must in its very nature be as contingent as that of the tenants. If the obligations under the lease were so contingent that they could not be proven in bankruptcy, defendant's obligation to indemnify against a default as to them was equally as contingent. All this is just as true, to say the least, if defendant's agreement be regarded as a guaranty.

Again in *Matter of Roth & Appel, supra* (at p. 671) we find the following: "The question in this case * * * with respect to a large part of the claim — is not, in its essence, whether rent to accrue in the future is provable against a bankrupt estate, but whether a claim founded upon an agreement to indemnify a landlord for loss of rents following bankruptcy is provable." It was held not to be provable.

Section 16 of the National Bankruptcy Law provides that " The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." While this defines the effect of a discharge, itself a creation of the same general statute, it does not, for it cannot, change the nature of an obligation to which it refers. It has no bearing here.

But the rent for December, 1921, was a fixed debt absolutely due and owing before the petition in bankruptcy was filed. In my opinion defendant's obligation under his written agreement is to indemnify against liability and not merely against loss. See, generally, 14 R. C. L. 56, and *Equitable Trust Co.* v. *National Surety Co.*, 214 Penn. St. 159. It is true that it first provides that he will " hold the party of the second part safe and harmless from any loss and damage." But it proceeds to state that he " guarantees the performance of the terms of said agreement of lease." He also agrees to *defend* at his own expense any action brought against plaintiff " upon said lease or for breach of any of the covenants thereof." All this evinces an intention to make him liable for the December, 1921, rent as soon as plaintiff becomes liable for it. Plaintiff could not be required to pay before December 15, 1921, he having agreed " to pay * * *, on demand, the amount due each month, in advance, on " the " lease, not later than the fifteenth day of every month, in case the same is not paid by Mr. Kory, the lessee mentioned in the lease, and signor thereof." This is of somewhat doubtful meaning. In express terms, however, plaintiff agreed to pay in advance the amount due each month. His obligation arose when " the amount " became due in advance, with the proviso that he would not be called upon to actually

make payment for fifteen days and not then if the tenants paid by that time. No one can read his agreement without concluding that he would have the right, as against the tenants, to pay the rent when it became due.

From this point of view plaintiff's liability for the December, 1921, rent is not subject to the reasoning in *Roth & Appel, supra.*

Regarded as a primary obligation to the landlord the condition attached to it was in the nature of a condition subsequent which did not and, for all practical purposes it may be said, could not happen. It was limited to happen by December 15, 1921, which was only ten days after the filing of the petition in bankruptcy. The adjudication must be taken to demonstrate that it could not happen, that the tenants' financial condition was such that a payment to the landlord would have been illegal. Plaintiff was liable when the petition was filed.

Regarded as an indirect obligation to the landlord, it was secondary to the obligation to pay the December, 1921, rent, a debt absolutely owing when the petition was filed. As an assurance that such debt would be paid it would be on a par with the obligation of an indorser of the bankrupt tenants' note due December 15, 1921. Such an indorser could have proved against the tenants' estate. So could plaintiff for the amount paid to satisfy his liability to pay the December, 1921, rent.

As the effect of defendant's guaranty was to indemnify plaintiff against liability, defendant's obligation, in relation to the rent for December, 1921, was a provable debt.

The payments for the water service, the meter charges, were respectively due and payable on November 1, 1921, and December 1, 1921; so that they are in the same category with the rent for December, 1921.

It follows, therefore, that as to these three items, one month's rent at the agreed rate and the two water bills, and as to the interest relating to the same, plaintiff cannot recover. They were provable against defendant's estate in bankruptcy; so that as to them the defense is sufficient.

Defendant argues that plaintiff's formal written agreement was a compromise that rendered the whole amount of plaintiff's liability, for the entire term of the lease, absolutely liquidated and unconditional, and in no manner thereafter contingent, that is after February 20, 1922, when the agreement was made. If we concede this to be true, we still have to face the reasoning and the decision in *Matter of Roth & Appel, supra,* the effect of which is fatal to a contention that plaintiff and the landlord could make a provable claim out of rent accruing subsequent to the date of the filing of

the petition in bankruptcy or out of a secondary liability to pay the same.

There will be judgment for plaintiff excepting in relation to the water rates and the rent due December 1, 1921. Proceed accordingly, on notice. The minutes and the exhibits will be retained at chambers. The other papers will be found at the clerk's office.

Judgment accordingly.